RUMELY v. McCARTHY, United States Marshal, et al.

(District Court, S. D. New York. February 3, 1919.)

1. CRIMINAL LAW ⟨⟩242(7)—PROCEEDINGS FOR REMOVAL OF ACCUSED TO ANOTHER DISTRICT FOR TRIAL—EVIDENCE.

In proceedings for the removal of a person charged with crime to another federal district for trial, all evidence which may affect the rights of the accused should be admitted.

2. CRIMINAL LAW ⟨⟩242(1)—FEDERAL OFFENSES—REMOVAL OF ACCUSED TO ANOTHER DISTRICT FOR TRIAL.

It is not ground for denying removal of an accused from one federal district to another for trial that there are prior pending indictments against him in the district from which removal is sought, where, although based to some extent on the same facts, the indictments charge different offenses.

3. CONSTITUTIONAL LAW ⟨⟩46(3)—CONSTITUTIONAL QUESTIONS IN HABEAS CORPUS.

Important questions as to the constitutionality of a statute cannot be raised for first consideration in habeas corpus proceedings to prevent the removal of petitioner to another district for trial.

4. CRIMINAL LAW ⬤⟱113—TRADING WITH THE ENEMY ACT—OFFENSES—VENUE.
  Under the provision of Trading with the Enemy Act Oct. 6, 1917, § 7a (Comp. St. 1918, § 3115½d), requiring reports of property owned or debts due to any alien enemy to be filed with the Alien Property Custodian within the time prescribed by the President, which expired December 20, 1917, where the custodian had not prior to that time designated any place for the filing of such reports other than his office in Washington, the offense of failing to file such a report was committed there, and the court in the District of Columbia has exclusive jurisdiction of the same.

Habeas corpus by Edward A. Rumely against Thomas D. McCarthy, United States Marshal for the Southern District of New York, and Samuel D. Hitchcock, United States Commissioner. Writ denied.

Powell, Wynne, Lowrie & Ruch, of New York City (Frederick J. Powell, of New York City, of counsel), for petitioner.

Francis G. Caffey, U. S. Atty., Harold Harper, Asst. U. S. Atty., and Bolitha J. Laws, Sp. Asst. U. S. Atty., all of New York City, for respondents.

MAYER, District Judge. Rumely is before this court on a writ of habeas corpus in a removal proceeding; the grand jury of the District of Columbia having returned an indictment (hereinafter called the Washington indictment) against him. Coincidently there is a writ of certiorari, directed to the United States commissioner, to produce the record of the proceedings before him. A statement of the essential facts is necessary in order to make clear the questions of law presented.

The Washington indictment made a prima facie case (Hyde v. Shine, 199 U. S. 62, 25 Sup. Ct. 760, 50 L. Ed. 90; Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112), and no testimony bearing upon this issue was introduced. It must therefore, for the purpose of this proceeding, be taken as true that

(1) On October 6, 1917, Rumely had stock of the S. S. McClure Newspaper Corporation which he held for and on behalf of the German government, and during the period from October 6, 1917, to December 20, 1917, the day to which the President extended the time for making reports, Rumely did not report the fact to the Alien Property Custodian; and that

(2) On October 6, 1917, Rumely was indebted to the German government in the sum of $1,451,700, and during the period aforesaid he did not report that fact to the Alien Property Custodian.

Prior to the finding of the Washington indictment, viz. on July 8, 1918, Rumely had been arrested and arraigned before United States Commissioner Hitchcock, in this district, upon charges which later were embodied, in substance, in two indictments (hereinafter called the New York indictments) returned by the grand jury of the Southern district of New York on August 2, 1918.

[1] These indictments were excluded by the commissioner on the ground that they charge offenses different from what is set forth in the Washington indictment. This was error, for the reason that the

---

⬤⟱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

committing magistrate and the court should have before them the entire situation, so as to be able to pass on all the questions which go to the rights of defendant in this proceeding. The New York indictments will therefore be discussed as in evidence.

[2] There is no dispute that (generally speaking) both the New York and Washington indictments grow out of the same transactions; but, as will presently appear, one of these indictments must be essentially different as to the facts and law, and the other, in any event, as to the law. One of the New York indictments, in substance, charges Rumely and one Kaufman with conspiracy to omit to report to the Alien Property Custodian certain facts as to enemy-owned property. The details need not be recited. It is obvious that this conspiracy indictment charges an offense entirely different from that charged in the Washington indictment, and will need proof at least in addition to that required in the Washington indictment.

The other New York indictment charges Rumely alone with perjury. It contains three counts, which, in one form or another, in substance, charge Rumely with making a false report to the Alien Property Custodian. It might be variously argued that the crime alleged was committed in New York or in Washington—I do not pass upon the point— but, in any event, the proof necessary to establish perjury may be different from that necessary to prove failure to report in accordance with the statutory requirement, and the punishment for the respective crimes is different. It cannot be held, therefore, that the New York perjury indictment and the Washington indictment are for the same offense, even though they arise out of substantially the same state of facts.

The first inquiry, therefore, is whether the Supreme Court of the District of Columbia had jurisdiction of the offenses charged in the Washington indictment. The United States attorney contends that that court had exclusive jurisdiction, and this contention is vigorously opposed by defendant.

At the outset, however, defendant insists that the act under which it is asserted he was required to report is unconstitutional, not as such, but as to this defendant, because of the circumstances in which defendant would have been placed if he had reported the facts to the Alien Property Custodian as the statute requires.

The argument is (1) that as defendant, for the purposes of this proceeding, has not controverted the allegations of the Washington indictment, it follows that defendant was guilty of trading with and for the enemy, in violation of section 3 of the Trading with the Enemy Act (Act Oct. 6, 1917, c. 106, 40 Stat. 412 [Comp. St. 1918, § 3115½b]); and (2) that, therefore, the compulsory disclosure of the facts alleged in the indictment would violate the rights of defendant under the Fifth Amendment, as it would compel him to be a witness against himself.

[3] It is clear that, at least since Henry v. Henkel, 235 U. S. 219, 35 Sup. Ct. 54, 59 L. Ed. 203, habeas corpus cannot be the medium for preliminarily considering so important a constitutional question, affecting not merely this defendant, but having possible widespread application, unless, as the Supreme Court said, the case was one of "those

rare and extreme cases in which the act was plainly and palpably void." Therefore, under Henry v. Henkel, supra, this contention must be laid aside without further consideration.

[4] The Trading with the Enemy Act provides (section 7a [section 3115½d]) in part:

"Any person in the United States who holds or has or shall hold or have custody or control of any property beneficial or otherwise, alone or jointly with others, of, for, or on behalf of an enemy or ally of enemy, or of any person whom he may have reasonable cause to believe to be an enemy or ally of enemy and any person in the United States who is or shall be indebted in any way to an enemy or ally of enemy, or to any person whom he may have reasonable cause to believe to be an enemy or ally of enemy, shall, with such exceptions and under such rules and regulations as the President shall prescribe, and within thirty days after the passage of this act, or within thirty days after such property shall come within his custody or control, or after such debt shall become due, report the fact to the Alien Property Custodian by written statement under oath containing such particulars as said Custodian shall require. The President may also require a similar report of all property so held, of, for, or on behalf of, and of all debts so owed to, any person now defined as an enemy or ally of enemy, on February 3, 1917: Provided, that the name of any person shall be stricken from the said report by the Alien Property Custodian, either temporarily or permanently, when he shall be satisfied that such person is not an enemy or ally of enemy. The President may extend the time for filing the lists or reports required by this section for an additional period not exceeding ninety days."

Assuming, for the purpose of discussion, that Rumely failed "to report the fact to the Alien Property Custodian," the first question is where, on the statute and the facts, such failure took place.

In United States v. Lombardo, 241 U. S. 73, 36 Sup. Ct. 508, 60 L. Ed. 897, the statute required that certain persons should "file" a statement in writing with the Commissioner General of Immigration, whose office was in the District of Columbia. It was held, in effect, that the place of filing determined the venue in the case of a failure to file. There was some discussion as to the meaning of the word "file," but that was only on the point as to when a paper is filed; the court observing that "a paper is filed when it is delivered to the proper official and by him received and filed." To the same effect is New York Central & H. R. R. Co. v. United States, 166 Fed. 267, 92 C. C. A. 331.

It is plain, therefore, for reasons unnecessary to elaborate, because so clearly stated in the two cases, supra, that it was defendant's duty to report to the Alien Property Custodian wherever his office was.

The act did not confine the locus of the office of the Alien Property Custodian to Washington, and undoubtedly there was authority to designate any place in the United States where the report could be made; but up to December 20, 1917, nothing had been done by the President or the Alien Property Custodian in the way of establishing or designating a place or office outside of Washington, D. C., where reports could be made. This is the finding of fact by the commissioner, supported by competent testimony, which will not be reviewed on habeas corpus; but, even if examined into, it will be found that the commissioner was right.

Up to December 20, 1917, when Rumely's offense was complete, the office of the Alien Property Custodian was at Washington, D. C., and that was clearly the place where the Alien Property Custodian was and had his official being. Therefore the court in the District of Columbia has exclusive jurisdiction, because there, and there only, was the crime committed.

The fact that it is charged in the New York indictments that Rumely reported falsely does not absolve him for failure to "report the fact." If, for the purpose of the argument, it is assumed that one crime (i. e., perjury) was committed because of an affirmative act, obviously the commission of such a crime does not relieve a defendant of his responsibility for an act of omission—i. e., failure to perform a duty laid upon him by statute.

Finally the court is asked to exercise its discretion, to the end, in any event, that Rumely may be detained here until the New York indictments are disposed of. Ex parte Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103; Beavers v. Haubert, 198 U. S. 77, 25 Sup. Ct. 573, 49 L. Ed. 950; Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112. In other words, this court is asked not to consent to Rumely's removal, because the New York indictments were found first, and he has retained local counsel, who have been engaged in preparing the New York causes for trial, and removal to the District of Columbia will entail expense, inconvenience, and hardship.

The situation of this defendant is not as strong in some respects as was that of the defendant Haas in Haas v. Henkel, supra. If the indictments were for the same offense, the address to discretion might appeal strongly to the court, in whose jurisdiction indictments were first found. In the case at bar, however, the indictments are for different offenses. The court, if it has the power (which point need not be decided), would not, in such circumstances, require the prosecuting officers to elect to proceed on the Washington indictment and abandon the New York indictments, or vice versa.

The questions of jurisdiction require careful consideration, and, if one or more crimes have been committed, the court will not require that prosecution must be abandoned in one jurisdiction as a condition of removal to another. It is but fair, however, in view of the necessary preparation and the possible employment of new or additional counsel in another jurisdiction, that the prosecuting officers should give defendant reasonable notice as to which indictment or indictments they intend to move first for trial.

To that end some appropriate provision should be inserted in an order dismissing the writ, as a condition of removal. Of course, the prosecuting officers should not be asked to determine which indictment to move first, until after defendant shall have finally pleaded to the Washington indictment.

The writ will be dismissed, as here indicated. Submit order on one day's notice.