"By the Habeas Corpus Act."
EX PARTE CHARLES F. HANSEN, Petitioner, v.
CHARLES E. EDWARDS, et al., Respondents.

In the Kansas City Court of Appeals, May 1, 1922.

1. **EXTRADITION: Requisition: Requisition not Required to State Whether Fugitive was Under Civil or Criminal Arrest in Asylum. State.** Requisition not required to state whether accused, the alleged fugitive, was under civil or criminal arrest in the asylum State, there being no provision in the federal statutes, (Sec. 5278, R. S. Stat., of U. S., Comp. Stat., par. 10126), governing the subject of requisitions requiring the governor of a demanding State to make such a statement in requisition.

2. ———: **Governor of Asylum State Can Waive its Rights to Have Fugitive Tried upon a Charge Pending in Its Courts.** The governor of asylum State can waive its rights to have a fugitive tried upon a charge pending in its courts.

3. ———: **Bail: Requisition May be Honored Though Fugitive under Bail to Appear for Trial on Criminal Charge in Asylum State, the Fugitive Bail Being Exonerated Thereby.** The fact that petitioner was under bond to appear for trial upon a. criminal charge in asylum State would not invalidate the action of the governor thereof in honoring the requisition, the fugitives bail being exonerated by the action of the governor in sending the accused out of the state on requisition.

4. **HABEAS CORPUS: Warrant: Alleged Fugitive Must Conclusively Overcome Prima-Facie Case Made by Warrant That He is in Fact not a Fugitive.** The warrant of the Governor of the asylum State

(35)

is prima-facie evidence that alleged fugitive is in fact such, and it becomes necessary for the latter to introduce evidence to overcome the prima-facie case made by the warrant, and it cannot be overthrown by merely the weight of the evidence but the evidence must conclusively show that the alleged fugitive was in fact not such.

5. ———: Petitioner Held on Warrant for Extradition not Entitled to Discharge on Theory he Was not in Demanding State at Time Alleged Crime Was Committed Where it Was Shown he was in Said State a Week Before Alleged Date of Crime. Petitioner held on a warrant for extradition, charged with "counseling, assisting, aiding and abetting" embezzlement is not entitled to discharge on *habeas corpus* because he was not in demanding State on the alleged date of crime, where it appeared he was in said State a week before, and it was shown that the alleged crime was committed within the period of limitations, even though the crime alleged was not a continuing one, the date that accused committed the crime being immaterial as the time was not the essence of the crime and any showing within the Statute of Limitations as the date upon which the crime was committed is sufficient.

## *Habeas Corpus.*

WRIT DENIED AND PETITIONER REMANDED.

*Hyde & Higgins* for petitioner.

*Cameron L. Orr, E. A. Enright, I. B. Kinbrell, M. J. O'Connell* and *William G. Holt* for respondent Darnall.

BLAND, J.—The petitioner is held by respondents under a warrant issued by the governor of Missouri upon a requisition from the governor of Kansas and seeks to gain his liberty by this proceeding in *habeas corpus*. The petition for the writ alleges that petitioner is being unlawfully held on account of the fact that said warrant, a copy of which is attached to the petition, was unlawfully issued and void for three reasons: First, the requisition was not sufficient because the county attorney of Wyandotte county, Kansas, who applied to the governor of Kansas for the requisition, did not state in his application whether or not this petitioner was under civil or criminal arrest in the State of Missouri, "the fact of such arrest, if any, and the nature of the proceed

ing on which it was based;" second, because the petitioner at the time of the issuance of the warrant by the governor of Missouri was under arrest and under a $10,000 bond to appear in a justice court in Jackson County, Missouri; third, because at the time of the issuance of the requisition and warrant and on the 15th day of March, 1921, the date alleged in the complaint upon which the request for the requisition was made and the date upon which petitioner is alleged to have committed the crime, he was not in the state of Kansas but was in the state of Missouri and such was the situation a number of days prior to such date and a number of days thereafter.

On the filing by respondents of their return this court heard evidence upon the issues raised. The petitioner introduced in evidence copies of all the extradition papers in this case, these papers consist of a request upon the governor of Kansas by the county attorney of Wyandotte County, Kansas, for the issuance of a requisition upon the governor of Missouri for the apprehension and rendition of the petitioner, stating that the petitioner stood charged by a complaint pending in the North City Court of Wyandotte County, Kansas, of the crime of counseling, aiding and abetting the commission of the crime of embezzlement committed in county of Wyandotte, State of Kansas; that since the commission of the offense the petitioner has fled from the justice of the State of Kansas and was confined in the city jail at Kansas City, Jackson County, Missouri. The request of the county attorney alleges other formal matters. To these papers is attached a copy of the complaint which is sworn to by R. M. Darnall. This complaint states that in Wyandotte County, Kansas, on or about the 15th of March, 1921, one Connie Gordon Blalock, then and there an agent and employee of Armour & Company, a corporation, and by virtue of such employment did receive and take into his possession and under his care certain personal property, to wit: meat products consist-

ing of ham, pork butts, pork loins, spare-ribs and pork trimmings of the value of $299.40 belonging to said Armour & Company, and charged said Blalock with embezzling such property and that "at the county and state aforesaid, and on the 15th day of March, 1921, the defendant, C. F. Hansen (the petitioner) then and there unlawfully, wilfully and feloniously counseled, assisted, aided and abetted the said Connie Gordon Blalock the said embezzlement aforesaid to do and commit."

Attached to the papers introduced in evidence by the petitioner is another affidavit of Darnall in which the affiant states—"   .  .  .   that beginning in the month of October, 1920, and continuing up and until and during the month of June, 1921, said Connie Gordon Blalock, an employee of Armour and Company, was counseled, aided and abetted by one C. F. Hansen and together they embezzled from said Armour & Co. meat products consisting of hams, pork butts, pork loins, spareribs and pork trimmings, of approximately the value of $20,000; that on the 15th day of March, 1921, the said Connie Gordon Blalock with the assistance, help and cooperation of the said C. F. Hansen, embezzled from said Armour & Co. meat products of the approximate value of $299.40."

The petitioner placed Darnall upon the witness stand and showed by his testimony that Darnall based his accusation that the petitioner was in the State of Kansas on March 15, 1921, upon the confession of certain other employees of Armour & Company, and that Darnall had no personal knowledge of the presence of this applicant in the State of Kansas on that day.

The great weight of the testimony introduced in evidence was to the effect that the petitioner was not in the State of Kansas on March 15, 1921, but whether this is conclusively established by the evidence we need not say, but for the purposes of this case we will assume that the evidence is uncontradicted that the petitioner was not in the State of Kansas on that date. The petitioner testified that for the past twelve years he had been a resident of Kansas City, Missouri, and that prac-

tically all of that time he had been engaged in the gro-
cery and meat business in that city; that on the 15th day
of March, 1921, and some time previous and subsequent
to that day, his place of business was situated about
one mile from the packing plant of Armour & Company,
in Kansas City, Kansas; that he was the owner of an
automobile and that one could go by automobile from
his place of business to Armour & Co. in fifteen minutes;
that March 15, 1921, was on Tuesday; that he was not at
Armour & Company during that week but that he had
been there during the previous week and had transacted
business with Blalock at that time; that for one year
prior to the week in which March 15, 1921, occurred he
had gone to the packing plant of Armour & Company
and purchased meat, sometimes from Blalock and some-
times from other employees; that he often ordered meat
from Blalock over the phone and might have talked to
him by phone on March 15, 1921; that after the week
in which March 15, 1921, occurred he visited the packing
plant of Armour & Company in Kansas City, Kansas,
about once a week and purchased meat in the same
manner and from the same persons as before that week.

On the back of the requisition is contained printed
information to the effect that the governor of New York
in 1887 issued a call in which he was joined by the gover-
nors of surrounding States for a conference of delegates
to be appointed by the governors of all the States and
territories for the purpose of adopting a uniform system
of rules and practices in interstate extradition; that the
conference met in New York in that year and was at-
tended by representatives from some twenty-five States
and territories; that among the rules adopted in regard
to extradition was one as follows: "F. If the fugitive
is known to be under either civil or criminal arrest in
the State or territory to which he is alleged to have fled,
the fact of such arrest and the nature of the proceedings
on which it is based must be stated" (in the requisition).

We think there is no merit in the first point made
by the petitioner to the effect that the requisition was

not sufficient because it did not state whether the accused was under civil or criminal arrest in the State of Missouri. There is nothing in the federal statutes governing the subject of requisitions (Sec. 5278, R. S. Stat. of U. S. Comp. Stat., par. 10126), requiring the governor of a demanding State to State whether or not the alleged fugitive is under civil or criminal arrest in the asylum State. There is no evidence as to whether or not the governors of the States of Missouri and Kansas were represented at the meeting at New York, held in 1887, when the rules and practice in relation to requisitions were adopted, and even if they were, there is no reason assigned as to why they should be bound in law by any rules adopted there. It will also be noted in this connection that the rule we have quoted merely states that the governor of the demanding State shall state that the fugitive is under arrest in the asylum State if the governor *knows* such to be a fact. Whether the governor of Kansas knew that petitioner was under arrest in the State of Missouri at the time of the issuance of the requisition is not in evidence. Of course, the governor of Missouri could waive the rights of the State of Missouri to have the fugitive tried upon a charge then pending in the courts of this State. [State v. Saunders, 232 S. W. 973.]

The fact that the petitioner was under a $10,000 bond to appear for trial before a justice upon a criminal charge in this State would not invalidate the action of the governor of Missouri in honoring the requisition. The fugitive's bail is exonerated by the action of the governor of the asylum State in sending the accused out of the State on a requisition. It is stated in Taylor v. Taintor, 16 Wallace 366, 369, 370—"If the principal is arrested in the State where the obligation is given and sent out of the State by the Governor, upon a requisition of the governor of another State," the performance of the condition is rendered impossible by the act of the law and the bail is exonerated.

The third and last attack made upon the requisition proceeding is that it is conclusively shown that the

petitioner was not in the State of Kansas on the 15th day of March, 1921, upon which date the complaint filed in the city court of Wyandotte County, Kansas, alleges that the petitioner "unlawfully, wilfully and feloniously counseled, assisted, aided and abetted" Blalock to commit the crime of embezzlement. The warrant of the governor of the asylum State in prima-facie evidence that the alleged fugitive is in fact such and it becomes necessary for the latter to introduce evidence to overcome the prima-facie case made by the warrant. [Ex parte Reggel, 114 U. S. 642; Roberts v. Reilly, 116 U. S. 80; Albright v. Clinger, 234 S. W. 57; Ex parte Pelinski, 213 S. W. 809.] And this prima-facie case cannot be overthrown by merely the weight of the evidence but the evidence must conclusively show that the alleged fugitive was in fact not such. [Ex parte Reggel, supra; Ex parte Pelinski, supra, 1. c. 810; Ople v. Weinbrenner, 226 S. W. 256.] The latest ruling of the Supreme Court of the United States is that the alleged fugitive need not have been in the demanding State at the exact date upon which he is charged to have committed the crime but it is sufficient if "it appears that the prisoner was in the State in the neighborhood of the time" alleged. [Strassheim v. Daily, 221 U. S. 280, 286; Hogan v. O'Neill, 41 Sup. Ct. Rep. 222; 12 R. C. L. 1248.] There is language used, which seems to conflict with this statement, in the case of Hyatt v. Corkran, 188 U. S. 691, 711, 712, where the court said—

"If indictments in this case named certain dates as the times when the crimes were committed, and where in a proceeding like this there is no proof or offer of proof to show that the crimes were in truth committed on some other day than those named in the indictments, and that the dates therein named were erroneously stated, it is sufficient for the party charged to show that he was not in the State at the times named in the indictments, and when those facts are proved so that there is no dispute in regard to them, and there is no claim of any error in the dates named in the indictments, the facts so proved are sufficient to show that the person

was not in the State when the crimes were, if ever, committed.''

However, from a reading of the entire opinion in the Hyatt case it becomes apparent that the real question involved in the case was that of constructive presence. It was conceded in that case that the accused was not in the State of Tennessee, the demanding State, until eight days after the crime was charged to have been and was actually committed, if at all. The case came to the Supreme Court from the New York Court of Appeals by writ of error. The Supreme Court in stating what was held by the Court of Appeals of New York said, l. c. 710, 711—

''And the court also held that the conceded facts showed the absence of the accused at the time when the crimes, if ever, were committed, and that the demand was in truth based upon the doctrine that a constructive presence of the accused in the demanding State at the time of the alleged commission of the crime was sufficient to authorize the demand for his surrender.''

The opinion in the Hyatt case holds that there is no such thing as constructive presence of the accused within the demanding state so as to make him a fugitive from justice. It will also be borne in mind in the Hyatt case, as in the case of Levy v. Splain, 267 Fed. 333, which is. based upon the Hyatt case, there was no showing that the accused was within the State *prior* to the date upon which the crime was alleged to have been committed.

In Ex parte Hatfield, 235 S. W. 591, 593, the Court of Criminal Appeals of Texas held that ''where it has been shown that one was actually within the demanding State at a time within the period of limitation against the prosecution of the offense charged, and that he has left said State, he appears ordinarily to be held a fugitive from justice.'' We think that this should be the true rule. In a proceeding of this kind we are not called upon to try the merits of the criminal prosecution and to require the persons in whose custody the

alleged fugitive is found to show that the indictment or information incorrectly alleges the date of the crime, would require a more or less investigation into the facts of the case and would put a burden upon such persons that they would not ordinarily be in a convenient position to carry, and certainly it ought not to be permitted to the alleged fugitive from justice in a proceeding such as the one to show facts which if shown upon the trial of the criminal proceeding itself would 'not exonerate him or gain his freedom.

It will be noted that in both the State of Missouri and the State of Kansas the date alleged in the information or indictment that the accused committed the crime is immaterial unless time is the essence of the crime and any showing within the Statute of Limitations as the date upon which the crime was committed is sufficient. [State v. Hurley, 242 Mo. 452, 458; State v. Fields, 262 Mo. 158, 163; State v. Barnett, 3 Kans. 244, 250; State v. Cooper, 31 Kans. 505.] Of course time is not material in the crime of which the petitioner herein is charged.

Under the petitioner's trial in the State of Kansas if it is shown that he committed the crime alleged at any time within two years prior to the beginning of the prosecution, then it would be the duty of the jury to convict him of the crime alleged. [General Statutes of Kansas, sec. 7941.] To release him now when it is admitted that he was in the State of Kansas and could have committed the crime within a few days prior to the time alleged in the complaint would be defeating the beneficial ends of the federal statute governing requisitions and providing for punishment of the guilty who have fled and are found in States other than the one in which the crime was committed. In this connection the language of the Supreme Court of the United States in McNichols v. Pease, 207 U. S. 100, 112, is appropriate—

"  .  .  .  a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fu-

gitives from justice is vital to the harmony and welfare of the States, and that 'while a State should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum in the territory of another State.' ''

It is admitted by the petition herein that if the crime charged was a continuing crime, proof that the petitioner was in the State of Kansas and at the Armour packing plant *prior* to March 15, 1921, in communication with Blalock in reference to embezzling the meat from Armour & Company charged to have been embezzled on that day, then upon proof that the petitioner was in Kansas on prior dates and engaged in acts looking toward the commission of the crime, would be sufficient to show that he was a fugitive from justice. We think that the crime of which the petitioner was accused is in its nature a continuing crime. He is charged in the complaint with ''counseling, assisting, aiding and abetting'' Blalock in the embezzlement of the meat; he admits that he was in the State of Kansas during the week prior to the one in which the date mentioned in the complaint occurred. At that time he could have well counseled and planned with Blalock in reference to the taking of the meat, and there is evidence in the form of an affidavit of Darnall attached to the requisition papers that the petitioner, together with Blalock, from October, 1920, to June, 1921, embezzled meat from Armour & Company of the value of $20,000. So we think that there is no question but that a continuing crime is involved in this case unless the fact that the complaint specifically charges that the counseling, assisting, aiding and abetting occurred upon March 15, 1921, and whether this fact would change the situation we need not say for the reason that whether or not the crime alleged to have been

committed is a continuing one is not material as the fact appears admitted by the petitioner himself that he was in the State of Kansas conferring with Blalock about meat in the neighborhood of the time he is charged to have commited the crime, and, as we have already stated, under the latest decisions of the Supreme Court of the United States (and it is upon these cases that we base, our decision) this evidence is sufficient to show that he was a fugitive from justice in a proceeding of this kind.

Under the views we entertain the prisoner must be remanded to the custody of respondents and the writ denied and it is so ordered.   All concur.