## UNITED STATES v. BUCK et al., and five other cases.

Nos. 13646, 13648, 13676, 13678, 13682, 13684.

District Court, W. D. Missouri, W. D. March 9, 1937.

See, also. (D.C.) 18 F.Supp. 213.

Maurice M. Milligan, U. S. Atty., Randall Wilson, Asst. U. S. Atty., and Sam C. Blair, Asst. U. S. Atty., all of Kansas City, Mo.

I. J. Ringolsky, William Boatright, Harry L. Jacobs, Ludwick Graves, and James Daleo, all of Kansas City, Mo., for defendants.

OTIS, District Judge.

If in the mandamus proceedings against me which I assume soon will be instituted (they are the arrows next to be drawn from a quiver apparently as inexhaustible as the widow's barrel), if in those proceedings the learned Circuit Court of Appeals shall say that these affidavits of prejudice are sufficient in law, I shall not only step aside from these cases, but shall do that gladly, most gladly. Experience now has demonstrated that to try one case of this character requires approximately three days and nights of hard labor, not to mention the time lost in reading anonymous letters, listening to anonymous 'phone calls, and giving consideration to every species of dilatory motion to which fertile imaginations can give birth. I shall be grateful indeed to the Court of Appeals if, before the date when the cases are set for trial, it can find merit in these affidavits. The prospect of trying cases like these for the better part of a year has no appeal. If I must try criminal cases, let them be such as occasionally disclose something attractive, like the moon shining down from above the oaks of the Ozarks on a typical scene. I can even say that if any federal judge in the United States would like to try one of these cases and will let me know (if it can be arranged with the Senior Circuit Judge and the Chief Justice and the Proctor of the Supreme Court), I shall endeavor to accommodate him and I shall gladly take three of his cases in exchange.

But there is one thing I will not do. I think there is no merit whatever in these affidavits. Thinking that, I will not voluntarily desert the post at which I have been put. Certainly it will take more to induce me to quit it than affidavits patterned on that well-known modernization of an ancient epigram:

"I do not like thee, Dr. Fell,
The reason why I cannot tell
But this I know, I know full well,
I do not like thee, Dr. Fell."

I have heard it said that a judge should fade away like a vanishing dream at the moment he discovers some litigant does

not like the color of his hair or the pace of his pulse. If, for example, one indicted as a horse thief is about to be tried for practicing his profession without a license and protests that he desires as his judge one who has not been so indiscreet as to suggest he thinks stealing horses of doubtful morality, the judge should say: "Why, of course, my dear sir, I yield to your wishes: You shall be the judge as to who shall be your judge: I realize that one prejudiced against horse stealing must be prejudiced against a man charged with stealing horses."

■ Such things have been said, but not by those who think. The father of such a conception of the duty of the judge is the fundamental error that the judge is but a referee at a game, chosen by the players, subject to removal at the will of either. He is *not* a referee at a game. He is *not* the representative of the parties. He is the representative of the sovereign and he will abandon the trust reposed in him only at the sovereign's command or when he falls at his post.

So far as I am concerned I shall contribute nothing toward making the federal judicial system an inefficient and an incompetent system. As a citizen, I am proud of that system. I shall not, by adopting an "Alphonse-Gaston" attitude in the office to which I have been appointed, help to make it impotent.

If I had the slightest personal prejudice against a single one of the defendants by whom affidavits have been filed, of course I would not stop to consider whether the affidavits are sufficient. I would disqualify myself on my own motion. But I have no such prejudice. I have no personal acquaintance whatever with any one of the defendants. While I suppose that I did see them when they were arraigned, I would not recognize any of them on sight. I have not even read the indictments pending against them (except for the indictment in case No. 13648). I could not possibly any more have a personal prejudice against any of the defendants than I have against those mythical characters, John and Mary Doe.

■ Whether I have or have not a personal prejudice against any of the defendants, it is my duty to disqualify myself if the affidavits filed are sufficient. I must disqualify myself if they are sufficient. I must refuse to disqualify myself if they are not sufficient. Fortunately all of them can be considered together for, while there are twelve affidavits, each is an exact copy of every other. The several affiants discovered at the same instant that I am prejudiced and have expressed their conclusions in that regard in the same words. I am not surprised by these simultaneous discoveries and this uniformity of expression. I must confess that I am a little surprised that only half of the defendants in each of these cases have filed affidavits. I shall not flatter myself that the remaining half believe I am not prejudiced. It is just conceivable that strategists of ability are holding back reserves which may be rushed up to the firing line if occasion arises (or another judge is called).

■ The statute authorizing affidavits of prejudice is specific in its requirements, and the courts have not so construed it as that it can be used for the mere purpose of delaying trials or to secure, without reason, the substitution of one judge for another. It provides that: "[Title 28] § 25. (Judicial Code, section 21.) Affidavit of personal bias or prejudice of judge. Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in section 24 of this title, or chosen in the manner prescribed in section 27 of this title, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

■ The affidavit must show that the judge (1) has a *personal* bias or prejudice either against the affiant or in favor of the opposite party, and (2) it must state the *facts and reasons* for the belief that such bias and prejudice exists. It is the duty of the judge against whom the affidavit is filed to pass on its sufficiency. Berger et al. v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481.

■ The affidavit shall state facts showing a *personal* prejudice. Such is the requirement of the statute. But what facts are stated in these affidavits? It is stated that I said in one opinion on a motion for a new trial, "Sinister forces are at work in Kansas City," and, in another opinion, "Sinister forces were and are lurking in the background." Those two statements certainly were relevant to the matters under discussion in the opinions. They were not uttered gratuitously. They were fully justified in the very paragraphs from which they are taken. A proposition in geometry scarcely could be more completely demonstrated. If the facts developed in the cases tried (in connection with which the opinions were written) do not suggest "sinister forces," neither does the stench that sometimes wafts itself over the city suggest stockyards and packing plants near at hand.

What is there in the assertion that, "Sinister forces are at work in Kansas City," or in its companion, "Sinister forces were and are lurking in the background," that suggests a personal prejudice against any individual? That is a puzzle that only a mediaeval scholastic might unravel. There must be a more intimate relation between the facts stated and the conclusion of personal prejudice than any can discern here. Indeed, the nonexistence of any connection whatever between the facts and the conclusion is so obvious that it cannot be made more so by argument.

Let us suppose that the two cases which were tried and in which opinions on motions for new trials were written were cases in which men were charged with conspiracies to violate the Dyer Act (18 U.S.C.A. § 408). Suppose the evidence in those cases clearly indicated that the conspiracies proved were not isolated. What was proved in those cases pointed to a general prevalence in the community of conspiracies of a like nature and of kindred crimes. If, with those disclosures in mind, the judge had said, when he was sentencing those convicted: "This type of crime appears rampant in this community: Transportation of stolen motor vehicles and conspiracies to transport them seem general here: It is high time a start is made toward upholding the law." What kind of reasoning is it that could conclude from such assertions that the judge was prejudiced *even against those who were then sentenced,* much less against men of whom he never had heard, whose identity was entirely unknown to him and who only were *charged* with similar offenses?"

#### Rulings.

Each affidavit is ruled insufficient and, accordingly, disqualification as to any defendant in any of the cases is refused. Each affiant-defendant is allowed an exception.