**UNITED STATES v. PARKER et al.**
(two opinions).

District Court, D. New Jersey.

April 13, 1938.

On the Merits May 3, 1938.

882

John J. Quinn, U. S. Atty., of Red Bank, N. J., Harold O'Dougherty, U. S. Atty., of Brooklyn, N. Y., and Hubert J. Harrington, Asst. U. S. Atty., of Newark, N. J.

James Mercer Davis, of Camden, N. J., and George S. Silzer and Harry Green, both of Newark, N. J., for defendants.

CLARK, District Judge.

In thirteen years' judicial service two affidavits of bias and prejudice have been filed against us. The first expressed the unfavorable opinion of one Arthur Flegenheimer, better known as Dutch Schultz. We ordered it. stricken. The "sudden" death of Flegenheimer while out on bail on reversal by the Circuit Court of Appeals of our disapproval of his bondsmen (two of whom are now under indictment for perjury ensuing upon their giving that bail) deprived us of the guidance of that court with respect to the legal questions raised by the said striking.

We mention this previous affidavit because we wish to reiterate our then ex-pressed criticism of the statute under which these affidavits are permissible. Such criticism if constructively intended is required of all judges by canon 23 of the Judicial Ethics (American Bar Association Reports, Vol. 62, page 1130). This canon reads: "Legislation. A judge has exceptional opportunity to observe the operation of statutes, especially those relating · to practice, and to ascertain whether they tend to impede the just disposition of controversies; and he may well contribute to the public interest by advising those having authority to remedy defects of procedure, of the result of his observation and experience."

We shall not repeat it in detail, because any one interested can find · it in our opinion in U. S. v. Flegenheimer, 14 F.Supp. 584. Suffice it to say that the critical opinion of this and other similar statutes is so generally held that it finds expression in the encyclopedias, and we find the author of the article on judges in Encyclopedia of Law, Vol. 23, page 582, saying: "But disqualifying a judge on the ground of prejudice is so liable to abuse that some states have refused to adopt it (a statute) and even where it (a statute) has been adopted 'its liability to abuse induces the most rigid construction of its terms."

And see 33 Corpus Juris, page 999. There seems to be general agreement, also, that the particular enactment governing the disqualification of United States judges exhibits peculiarities that accentuate the abuses inherent in all such statutes. St. Louis Law Review, June, 1935, at page 331; 29 Harvard Law Review at page 431. The principal peculiarity is the one with which the case at bar concerns itself. It is that the accused judge can consider only the legal sufficiency and timeliness of the affidavit. Berger v. U. S., Ill.1921, 255 U.S. 22, 41 S.Ct. 230, 65 L. Ed. 481; Chafin v. U. S., 4 Cir. 1925, 5 F.2d 592, certiorari denied, 1925, 269 U.S. 552, 46 S.Ct. 18, 70 L.Ed. 407; Lewis v. U. S., 8 Cir. 1926, 14 F.2d 369; Nations v. U. S., 8 Cir. 1926, 14 F.2d 507, certiorari denied, 1926, 273 U.S. 735, 47 S.Ct. 243, 71 L.Ed. 866; Simmons v. U. S., 5 Cir. 1937, 89 F.2d 591; U. S. v. Buck, D.C. Mo.1937, 18 F.Supp. 827. He is precluded from refusing to recuse himself by any inquiry into or discovery about the truth or falsity of the facts alleged. In other words, the judge is denied that "day in

court" to whose provision for others he owes his very office.

In the light then of this peculiar, but nevertheless well-established principle, let us proceed to the analysis of the affidavits in the principal case. They contain ten paragraphs each, and the required certificates of counsel of which more hereafter. We need concern ourselves with only four; the third, sixth, and tenth as to bias and prejudice, and the seventh as to timeliness. In order to justify said wholesale elimination, we shall touch briefly on the others.

■ The first correctly asserts the defendants' indictment in the Eastern District of New York for transporting a kidnapped person in interstate commerce (the so-called Lindbergh Law, 18 U.S.C.A. § 408a) and our causing the issuance of a bench warrant upon a request for a hearing on removal to said district. The second avers a general conclusion of bias and prejudice bare of supporting facts.

The couching of the fourth in words of information and belief is fortunate because the information upon which the belief is formed happens to be inaccurate. The defendants say that the usual procedure in removal proceedings in New Jersey contemplates an initial hearing before a United States Commissioner, and that here, as in the Schultz case (tactfully phrased in the affidavits as "except one"), we are departing from precedent. We may say we see no legal objection to such departure, but the facts are otherwise. In 1930, the then United States Attorney for the Southern District of New York voiced a vigorous objection to the dilatory character of certain removal proceedings on mail fraud charges then pending in this district. Since then our own United States Attorney has in many instances proceeded directly before the District Judge. Such practice is sanctioned by the statute, 18 U.S.C.A. § 591, and inasmuch as the order of removal must be signed by the judge and cannot be signed by the commissioner, it saves defendants not desirous of delay the trouble and expense of duplicate hearings. Furthermore, the Attorney General recognizes its general incidence in his Instructions to United States Marshals. We quote: "208(d) Persons arrested on Writs of Capias should be taken directly to Court, if in session, unless the defendant desires to and can give bond for his appearance, in which case he should be taken before the nearest commissioner for that purpose." Page 38.

Concededly, the warrant of arrest in this case comes within the term capias. The regulation fixes the place of giving bail as the nearest commissioner, and expressly leaves the place of appearance on removal unfettered and as before the judge issuing the warrant. There are three such removal proceedings from this district currently pending in the Court of Appeals. We suggest the papers on the writs of habeas corpus allowed to make such appeals possible, drafted by learned counsel, as precedents if they become necessary in the case at bar.

Paragraph 5 has a clairvoyant aspect. It speaks of our future intention to deny the defendants their right of appeal. It is not clear how one can harbor an intention legally impossible of fulfillment, writs of mandamus being what they are. Further, the purity of our intention has been amply demonstrated in the appeals allowed in the cases just referred to and in our flat statement made at the time of the filing of these affidavits. However that may be, bias and prejudice depends upon facts and not upon speculative mental processes.

The eighth and ninth paragraphs set forth the issuing of the bench warrant referred to in paragraph 1 and its instructions to the deputy marshal to bring the defendants before us "in defiance of section 595, title 18, U.S.C.A." The record of the proceeding in Camden indicates that this last phrase is a reference to the legal contention there made. It was fully exploited in the argument on making permanent our learned colleague's temporary restraint and in the application to the Circuit Court of Appeals for a supersedeas of his dissolution of that restraint. We fail to see any relation between the solution of this legal question and our bias and prejudice. Our bench warrant is from this point of view in the nature of an order to show cause. Upon its return defendants could have urged upon us their construction of the statute. If that construction had prevailed, we should have been legally required to hold that the United States must proceed before the commissioner nearest to where the deputy marshals happened to make the arrests. If it had not prevailed, their exception sustained in the Court of Appeals would have rendered all proceedings before us nugatory.

■ Coming back then to paragraphs 3, 6, and 10, all of which attempt the assertion of "facts and reasons" in support of affiants' belief of our personal bias and prejudice, we find all but one of these assertions not legally sufficient and for one common reason. That common reason is well expressed in the case of Johnson v. United States, D.C., 35 F.2d 355, at page 357: "However false, there can be no denial, but the charge of personal bias or prejudice must be accepted as true. To avoid abuses, the law requires that the affidavit be of legal sufficiency. That is, that the charge be of personal bias or prejudice, that the facts and reasons for the charge be set out and give fair support to the accusation, and that upon its face the affidavit presents evidence of good faith. To that end mere rumors, gossip, general statements that affiant by some person is informed and believes that at some time, some place, some occasion, the judge expressed sentiments manifesting bias or prejudice, are not enough, but informant, and time, place, occasion of, and the judge's expressions, and that the bias or prejudice is personal, all must be set out in the affidavit. This alone will enable the affidavit to bear on its face that evidence of good faith which is necessary before it can be held to be legally sufficient. See Berger v. U. S., supra. Otherwise, the penalties of perjury and disbarment are no restraint on the litigant and counsel; for otherwise it is not even a possibility of either being invoked, much less carried to successful conclusion, however false be affidavit and certificate."

And see Nations v. United States, supra; Minnesota & Ontario Paper Co. v. Molyneaux, District Judge, 8 Cir., 70 F. 2d 545; Wilkes et al v. United States, 9 Cir., 80 F.2d 285; Simmons v. United States, supra.

We analyze the assertions in order of vagueness. In paragraph 6 our alleged expression of the guilt of the defendants is given no time when, place, where, or person to whom. In paragraph 3 our alleged announcement of assignment by our colleagues to try the case of United States v. Parker is given no time when, "the newspapers" as place where, and person to whom. We deem this too uncertain. A few hours investigation by the United States Attorney produced a newspaper of April 26, 1937, carrying a story of which paragraph 3 seems a garbled version. That story contained in one part our rather elaborate statement of the arrangements of the prospective trial of the defendants and in another part a statement that there had been a conference of the judges. This latter statement was expressly on the authority of the newspaper, and did not purport to quote us in any way. In paragraph 10 our alleged remark about losing patience with the Parkers and denying them bail is given a time, March 28, 1938, a specified newspaper, and an anonymous person, a reporter from a press association. We think that this anonymity makes paragraph 10 also too uncertain. A few hours investigation by the United States Attorney indicated that the newspaper specified had no franchise from the particular press association, and, further, that the association dispatches for March 28th and preceding days carried no quotations from us on any subject.

We feel that the cases are sound in insisting on this certainty of time, place, and person. Such insistence will cause defendants purposing the filing of affidavits of bias and prejudice to be accurate or else be in the horns of the dilemma of failure or prosecution for perjury. This is particularly true of the use of newspaper articles. Judges, like other public officials, are in frequent and pleasant contact with the "gentlemen of the press." It is their duty to see that the people obtain news of the people's courts. In co-operating in this laudable objective, reporters, like judges, being fallible, are sometimes guilty of misquotation. In ordinary fairness the person contemplating an affidavit should be compelled to seek out the particular reporter, or at least account for his failure to do so.

As we have found the "conference of the judges" part of paragraph 3 too uncertainly phrased, we may be permitted to advert to another subordinate reference to the judges which we should otherwise pass under the taken as true rule. We do so because we believe it against public policy to permit the statement to stand. It is asserted that the judges for their own convenience have divided the district, like Gaul, into three parts, and that the trial of causes follows that division. We hope no judge would be guilty of consulting his own convenience rather than that of the public. Anyway, these judges have not in fact divided the district at all.

The writer of this opinion happens to be the draftsman of that amendment, November 26, 1930, to our General Rule 12 which prescribes the place of trial. The pertinent parts read as follows:

"All cases hereafter commenced and all cases pending at the time of adoption of this rule, both at law and in equity shall be listed by the Clerk at either Newark, Trenton or Camden, taking into consideration the convenience of litigants, counsel and witnesses, and where the cause of action arose, and the place so fixed shall be the place of trial and the place for subsequent listings unless changed by order of the Court on motion." Page 9, Rules, U. S. District Court for New Jersey.

"Civil cases in which the United States is a party shall not be placed upon regular term calendars, but a special calendar shall be prepared for each term. The place of trial shall be fixed, and the calendars prepared, in accordance with this rule." Page 10, Rules, U. S. District Court for New Jersey.

Two things will be observed about this rule. It adds the convenience of litigants, counsel, and witnesses to the ordinary venue provision (in the principal case one litigant is the United States and its counsel is the United States Attorney in Brooklyn and the probable cause witnesses come from Brooklyn). And it applies in terms only to law and equity cases, and by implication goes even further in that "civil cases in which the United States is a party," follow the general rule. Manifestly, no court would attempt to dictate to the United States where within the bounds of its statutory prescriptions it should try its criminal cases. The efficient prosecution of crime requires that latitude.

We ignore the repetition in paragraph 3 of the capital crime and county venue argument. That question was raised and ruled on in our opinion filed April 14, 1937, 19 F.Supp. 450, at page 455. It is now pending on appeal. We further wonder at the knowledge affiants seem to possess of the proceedings at judicial conferences. It surpasses our own.

We noted that one averment of paragraph 3 of one of the affidavits is an exception to all the other averments of paragraphs 3, 6, and 10, in that it is certain as to time, place, and person. We have reference to our own remarks at the time of imposing sentence upon Ellis Parker, Sr. We can conceive of a judge so far forgetting himself as to exhibit personal bias and prejudice against a defendant during a trial or on imposing sentence. An instance would be the use of opprobrious epithets. Then we would agree that the same judge should not preside at any future trial of or proceedings in that or, for that matter, any other case.

We have never heard and can find no reported case of an attempt to attribute prejudice to a judge for the performance of his sad duty of inflicting punishment. As part of that duty it has been the almost universal practice of judges presiding in criminal courts to accompany their imposition of the penalty itself by an explanation of the reasons for inflicting it. It is felt that both the public and the defendant may benefit thereby. It is no more personal than is the verdict of the jury. They are both parts of the processes of justice.

In the principal case we happen to have emphasized this by the use of the words, "I say this with no personal criticism or personal judgment." It is perhaps unnecessary to add that the whole passage offered to show bias has in fact a plainly contrary connotation. It refers to defendant Ellis Parker, Sr.'s, distinguished career, and attempts to account for what the jury had found to be his transgressions and their conceded injury to the administration of justice on the psychological basis of too long possession of too much power.

■ In view of the foregoing it may seem somewhat technical to rule upon the time requirement of the statute. The pertinent phrase reads: "shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time." 28 U.S.C.A. § 25.

Consideration of this condition precedent demonstrates, however, that it is a matter of substance rather than of form. In addition to the other abuses of which these affidavits are capable is their use as instruments of delay. This is obvious, and the cases emphasize it. Shea v. United States, 6 Cir., 251 F. 433; Chafin v. U. S., supra; Nations v. U. S., supra; Bishop v. U. S., 8 Cir., 16 F.2d 410; Rossi v. U. S., 8 Cir., 16 F.2d 712; Johnson v. U. S., supra; U. S. v. Murphy, D.C., 19 F.Supp. 987. To avoid that use for delay the statute prescribes a time limit which must like all calendar limitations be based on

886

fixed points. A sensible point from the aspect of courts is the commencement of a term. This limit the affiants have, as to two of their three grounds of prejudice, clearly violated. They do not account for their lack of knowledge of the alleged judges' conference announcement on April 26, 1937. This was before the trial itself and could have been used as a ground of challenge then (the failure to do so probably waives it anyway). They knew of the remarks on sentence of June 30, 1937, ten months ago. On March 24, 1938, they knew that the removal proceedings were to be held, and by their own actions in avoiding arrest and seeking an injunction brought them within, the April term, commencing April 6th. The statute probably requires a filing ten days before, regardless of knowledge of what judge is going to preside. In the case at bar they assert their knowledge that the writer was to be the one.

■■ The affidavits are silent on the time when the specified newspaper article came to the knowledge of affiants. As it was not published until March 28, 1938, it could not have been earlier. In the absence of affirmative proof contra, we must take that as the date. It is without the ten-day rule by one day. We think, however, that it transgresses the "due diligence" interpretation of the cases passing upon the exception in the time provision of the statute. Chafin v. U. S., supra; Bishop v. U. S., supra. It is not in our opinion "due diligence" to wait nine days during which strenuous efforts to avoid appearing before us were made in other courts, and to only file the affidavits when those efforts appeared to be unsuccessful.

■ We spoke earlier of the certificate of counsel. The cases hold this to be an essential rather than a technical requirement. Newman v. Zerbst, Warden, 10 Cir., 83 F. 2d 973. They are not altogether clear on the implications of its purpose. We agree that the belief of bias and prejudice in issue is that of defendants themselves and not that of their counsel. The fact that counsel in the case at bar very courteously expressed his satisfaction with our fairness saying, at the conclusion of the trial:

"Well, I am going to take a chance with your Honor anyhow, and I think it is up to me to say, to express my great pleasure at the manner in which his Honor has presided in this case, and his patience and tolerance. He has had occasion numerous times no doubt to reprove me as well perhaps as other counsel, and I want to say, Judge Clark, I do from the bottom of my heart appreciate your patience and the kindliness with which you have presided in this case.

"And I say that, your Honor please, in this open manner because I think it is due to your Honor." Record, U. S. v. Parker, p. 5662.

—may not be dispositive of the defendants' mental processes. We should think that it would be at least relevant to whether a defendant could be certified as expressing a genuine attitude of mind or was simply attempting to disqualify a judge for the purpose of escaping justice. We discussed this question in the case of U. S. v. Flegenheimer, above cited. In the absence of controlling authority, we leave it open.

In conclusion we cannot help expressing our sense of the futility of this whole proceeding. These defendants quite obviously prefer the brand of judicial wisdom dispensed by the Circuit Court of Appeals. Under our system, they have a perfect right to do so and we should be the first to acknowledge its superiority. Even before what might be described as the "principal" trial, they sought the aid of a judge of that court in an effort to prevent its going on at all. Our errors assigned in that principal case are 483 in number. During the very currency of this bias and prejudice application an appeal from our learned colleague's refusal to enjoin the removal proceeding was argued and lost.

That being so, one is forced to the conclusion that the affidavits are filed in the hope that we will add one more to the 483 errors we are already accused of making. Only a withdrawal (discussed on the day of their filing) could overcome that conviction. The United States Attorney has his own obligations in the conduct of cases in behalf of the United States, and we have every confidence in his fidelity to them. Speaking only for ourselves, therefore, we are quite ready to believe that what appear to be inaccuracies in the affidavits are the result of an honest mistake and not of an unlawful intent. We suggest, however, that that particular kind of mistake has a tendency to undermine the confidence in those courts upon which we must depend for our security.

For reasons given, these affidavits and applications must be stricken from the files.

It is so ordered.

### On the Merits.

The United States asks the removal of these defendants to the Eastern District of New York (Brooklyn) to stand trial upon an indictment charging them with transporting a kidnapped person in violation of title 18 U.S.C.A. § 408a, the first section of the so-called Lindbergh Law. They resist the petition on six grounds. Three of these grounds are now advanced for the first time and three have been previously presented. Two new grounds depend legally on their previous conviction in this court of conspiracy to transport a kidnapped person in interstate commerce in violation of the second section, title 18 U.S.C.A. § 408b, and their appeal from that conviction. Removal from district to district in the United States postulates one common sovereignty and one system of courts therein. In that respect it differs from interstate rendition and from international extradition. We think the defendants fail to recognize this difference.

 It is true that custody in the asylum state may prevent immediate rendition. That state has a prior right to insist upon expiation. Manifestly this choice is not that of the expiator.

"The right of the Governor of the asylum state to decline to honor a demand for extradition is a right of the state, and is in no wise based on the personal rights of the fugitive, and, where no objection is made by the court or authorities who have jurisdiction over the fugitive, he has no right to object to the exercise of jurisdiction over him by the court of another state." People v. Klinger, Ill.1925, 319 Ill. 275, 149 N.E. 799, 800, 801, 42 A.L.R. 587.

Being the right of the sovereign, the proper executive authority of that sovereign need not insist upon it. It can be and often is waived by the Governor. People v. Klinger, supra; Opinion of the Justices, 1909, 201 Mass. 609, 89 N.E. 174, 24 L.R.A.,N.S., 799; Hansen v. Edwards, 1922, 210 Mo.App. 35, 240 S.W. 489; Roberts v. Reilly, 1885, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544. Title 18 U.S.C.A. § 662, cases cited in note 40.

 The United States courts function under one sovereign only, the chief executive of the nation. The United States attorneys are his agents in the administration of justice. Logically they should have his power to waive any right of local expiation and logically also their co-operation in removal amounts to such waiver. The point seems never to have arisen except by way of quære. Ingraffia v. Keville, 1 Cir., 62 F.2d 301.

 When, however, the United States attorney's co-operation is coupled with that of the court in the asylum district, there is plenty of authority and it is unanimous. The person in custody may be removed irrespective of his views on the subject. Beavers v. Haubert, 198 U.S. 77, 25 S. Ct. 573, 49 L.Ed. 950; U. S. v. Marrin, D. C., 227 F. 314; In re Andrews, D. C., 236 F. 300; Rumely v. McCarthy, Marshal, D. C., 256 F. 565; U. S. ex rel. Gellman v. Stauffer, 6 Cir., 22 F.2d 553; Ingraffia v. Keville, supra. The judges writing the opinions in three of the cases above cited so indicate:

"This case establishes that the sovereignty where jurisdiction first attaches may yield it, and that the implied custody of a defendant by his sureties cannot prevent. They may, however, claim exemption from further liability to produce him.

"There is nothing in Re Johnson 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103, which militates against this view. Indeed, that it is the right of the court or sovereignty to insist upon or waive its jurisdiction is there decided. Page 126, of 167 U.S., 17 S.Ct. 735, 42 L.Ed. 103." Beavers v. Haubert, supra, 198 U.S. 77, at pages 85, 86, 25 S.Ct. 573, 575, 49 L.Ed. 950.

"The right of the Illinois court to yield its jurisdiction under that statute, and order the removal of appellants without their consent, whether under bond or arrest, is too well settled for argument." U. S. ex rel. Gellman v. Stauffer, supra, at page 553.

"The fifth or remaining assignment questions the validity of the order of removal in view of the admission in the pleadings that the appellant was under bail awaiting trial on an indictment found against him in the District of Massachusetts. It appears that the district attorney for the District of Massachusetts filed the petition requesting the removal of the appellant to the Western District of Mis-

888

souri; that the District Court entered the order of removal; and this action on the part of the district attorney and the court was taken with full knowledge of the pendency of the indictment in the District of Massachusetts. The appellant cannot for this reason question the validity of the order. The government, with the consent of the court, had the right to elect whether to proceed first against the defendant in the District of Massachusetts or in the Western District of Missouri." Ingraffia v. Keville, supra, 62 F.2d 301, at page 304.

█ In the principal case the defendants, the Parkers, are in our custody. Their indictment, pleading, trial, and conviction took place in this court. Their release on bail pending appeal does not affect that custody. Their bond runs to us and must be forfeited or exonerated by us. This appears from its very language: "The condition of this Recognizance is such that if the said Ellis Parker Sr. and Ellis Parker Jr., the defendants, upon whose application an appeal has been allowed to the United States Circuit Court of Appeals for the Third Circuit and is now pending, shall be and appear at the District Court of the United States, for the District of New Jersey, upon the determination of the proceedings on said appeal, and the receipt and filing of a mandate or other process or certificate showing the disposition thereof by the said Court of Appeals, or, within five days thereafter, to answer and obey whatever final order or judgment, except as to costs, shall be made in the premises, and not depart without leave thereof, then this recognizance to be void; otherwise, to remain in full force and virtue." (June 30, 1937.)

█ The appellate court either affirms and orders the carrying out of our sentence or else reverses and orders a retrial by us. Our order of removal waives our right to currently, at least, execute the sentence or conduct the retrial.

█ Also because of that common sovereignty, a removal proceeding is strictly prescribed. Only three concessions to occasional hardship are made. They are a crime, an identified criminal, and probable cause for believing the crime's commission. Those concessions do not include, and very obviously preclude, any defensive matter. The cases so hold. Cochran v. Esola, 9

Cir., 67 F.2d 91; Sell v. Rustad, 8 Cir., 22 F.2d 968. This makes it improper for us to consider the plea of former jeopardy. Such a plea, more anciently autrefois acquit, convict, or attaint, is a plea in bar (Blackstone, vol. 2, p. 1481) or, in other words, a matter of defense. This will not be disputed, Wharton, c. XIII; Corpus Juris, vol. 16, p. 235, and cases there cited. Its consideration may and again often does require the deliberation of a jury. 51 Harvard Law Review 925; 40 Yale Law Review 466. And see also Re Wm. Barron, Criminal Appeal Reports, Vol. 10, p. 81 (1914); Charles Aughet, Criminal Appeal Reports, Vol. 13, p. 101 (1918). Any intimation of our own views would be lacking in respect to our learned colleagues in the Eastern District of New York. Upon them, and upon them alone, the defendants must press their defense of former jeopardy. .

█ These grounds of resistance to removal fail as a matter of law. The third new ground fails as a matter of fact. We have spoken of probable cause. The origin of that doctrine lies in the desire to spare the probably innocent the hardship of defending in (theoretically) distant places. The action of a grand jury, however distant, indicates some cause for a contrary inference. It requires a going forward with proof. The cases are unanimous in their declaration that an indictment is prima facie proof of probable cause. U. S. ex rel. Kassin v. Mulligan, 1935, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501; Grigg v. Bolton, 9 Cir., 1931, 53 F.2d 158, certiorari denied, 285 U.S. 538, 52 S.Ct. 311, 76 L.Ed. 931; U. S. ex rel. Maggio v. Schneider, 3 Cir., 1933, 68 F.2d 50; Lefkowitz v. Schneider, 3 Cir., 1931, 51 F.2d 685. In the case at bar, the United States offered a copy of the indictment in the Eastern District duly exemplified, unnecessarily as it turned out (Turnball v. Payson, 95 U.S. 418, 24 L. Ed. 437), and one supporting witness. The defendants offered no evidence in rebuttal. In its absence, removal follows automatically.

Two grounds of their resistance to removal referred to as previously presented have already been passed on by this court. They are the affidavit of bias and prejudice, opinion filed April 13, 1938, and the interpretation of the phrase "ransom, reward or otherwise" in the Lindbergh Law,

opinion filed March 22, 1937, D.C., 19 F. Supp. 450. We adhere to the views there expressed.

■ The third old ground was rejected by our learned colleague in an opinion filed April 4, 1938, 23 F.Supp. 207. The United States District Judges are judges of co-ordinate jurisdiction. 33 Corpus Juris, p. 970. The orderly administration of justice requires uniformity in their rulings and binding effect, therefore, to priority in time. An early New York judge thus expressed it: "The true reason why it is not fit that one judge should sit in review of the decisions and judgments of another judge of the same court, and that reason rests not so much on a want of power to correct what has been mistakenly done as the confusion and vexatious litigation that would be likely to arise from so unwise a course in the administration of justice." Kamp v. Kamp, 59 N.Y. 212, at page 217.

Our learned colleague held that the surrender of the defendants in his court (record Camden proceedings page 68) removed them from any protection offered them by section 595, title 18 U.S.C.A. We bow to that ruling. In pursuance of that same principle of comity, we make no present comment on defendants' interpretation of that statute as a prescription of venue rather than an administrative direction to the United States marshals.

As the question may arise again, it is not inappropriate to record here the result of some slight research in the Congressional Record. There was no time or opportunity for such investigation prior to the Camden proceedings. We quote:

"Our examination resulted in discovering one form of abuse prevalent, as we found from an examination of officers of the various departments, not only in Massachusetts, but in very many States. This form of abuse consisted in a combination between the marshals and the United States commissioners appointed by the circuit court to make fees against the Government. These abuses the present bill proposes to correct. The nature of these abuses I will illustrate.

"In Massachusetts, for instance, although there are 18 commissioners appointed by the United States circuit court in pursuance of the provisions of section 627 of the Revised Statutes, these officers being scattered all over the State for the convenience of the people, yet it has been largely the practice to make informations before one commissioner alone, regardless of the residence of the person charged with the offense, and to have the marshal or his deputy proceed to distant portions of the State to arrest the prisoner and take him to Boston for a hearing before this single commissioner." Congressional Record, House, January 17, 1893, vol. 24, part 1, p. 647.

"It was for the purpose of remedying an evil which exists in every State, where marshals arrest persons in one portion of the State and possibly take them the whole length of the State, for the purpose of making mileage against the Government, to have a hearing before some particular United States commissioner. In some States they take these persons thus arrested away from their homes some 200 miles for the sole purpose of making mileage against the Government, sometimes through a combination between the officer, United States Commissioner, and even the defendant himself." Congressional Record, House, February 2, 1893, vol. 24, part 2, p. 1107.

"Mr. Sayers. I will state to the gentlemen that that is the only change, and it is put in there for the purpose of preventing the marshal from taking a prisoner past one commissioner in order to try him before another commissioner for the purpose of getting mileage." Congressional Record, House, March 17, 1894, vol. 26, part 4, p. 3057.

Orders appropriate to the preservation of the defendants right to appeal our judgment will be entered on notice.