**STUYVESANT INSURANCE COMPANY, Appellant.**

v.

**UNITED STATES of America, Appellee,**

No. 19371.

United States Court of Appeals Eighth Circuit.

April 17, 1969.

Rehearing Denied June 10, 1969.

Dean E. Richards, Indianapolis, Ind., for appellant.

King M. Trimble, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., on the brief.

Before GIBSON, LAY and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

Stuyvesant Insurance Company, a surety for one, Sharon Kathleen Davis, seeks remission of a $10,000 bond forfeiture entered by the United States District Court for the Eastern District of Missouri. The principal of the bond, Davis, failed to appear for a scheduled court trial and neither the surety nor the federal government has been able to locate her or offer any explanation for her nonappearance except willful default. The District Court denied any relief to the surety. We affirm.

The only ground urged on appeal by the surety is that its risks were increased and the terms of the bail bond were enlarged by the District Court without the surety's knowledge or consent.[1] The bail bond followed the illustrative Form 17 in the Appendix of Forms, Federal Rules of Criminal Procedure, and commanded the principal's appearance before the arraigning court at a time certain,

"* * * and at such other places as the defendant may be required to ap-

1. After the bond had been executed containing a provision that the principal Davis was "not to depart the Eastern District of Missouri", the District Court, at her request, granted her leave to visit her home at Peoria, Illinois, which is approximately 150 miles from the Court's location at St. Louis, Missouri.

pear, in accordance with any and all orders and directions relating to the defendant's appearance in the above-entitled matter as may be given or issued [by the Court, and] the defendant is not to depart the Eastern District of Missouri * * *, except in accordance with such orders or warrants as may be issued by [the Court]." [2]

The surety relies on decisional law that exonerates a surety where the sovereign makes it impossible for the surety to perform, on general contract principles of not holding an obligor to unilateral change in the terms or conditions of a bond and on the equitable principle of justice embraced in Rule 46(f), Fed.R. Crim.P.

Relief on or remission of a bail bond forfeiture in federal courts is now governed by Rule 46,[3] which liberalized and supplanted the old statute 18 U.S.C. § 601. The cases prior to the enactment of Rule 46 only allowed relief where the default was not willful, a subsequent trial of the cause could be had, and public justice did not otherwise require the penalty be enforced. Smaldone v. United States, 211 F.2d 161, 163 (10 Cir. 1954).

■ The early case of Reese v. United States, 76 U.S. 13, 19 L.Ed. 541 (1870) recognized that sureties on bail recognizances are in many respects different from sureties on ordinary bonds or commercial contracts. The sureties can discharge themselves at any time by surrendering the principal and are discharged at the principal's death. Sureties may also arrest the principal without warrant to effect his appearance in court, but any change in the bail contract, no matter how trivial, made without their consent releases them.[4] Another ground for the decision in *Reese* was that the government had made it impossible for the surety to perform by allowing the principal to leave the United States, recognizing that the surety's powers of arrest can only be exercised within the United States, and holding: "It would be against all principle and all justice to allow the government to recover against the sureties for not producing their principal, when it had itself consented to his placing himself beyond their reach and control." 22 of 76 U.S.

We do not think that this case falls within the holding of *Reese, supra,* in that the government did not make it impossible for the surety to perform; nor

2. The quoted phraseology was placed in the body of the bond and is in addition to the usual clauses contained in illustrative Form 17. There is no travel restriction clause in illustrative Form 17.

3. Rule 46, relating to release on bail, reads in pertinent part:

   "(f) Forfeiture.

       *     *     *     *     *

   (2) Setting Aside. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture.

       *     *     *     *     *

   "(4) Remission. After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision."

4. We do not think the present law dealing with compensated sureties would take such a technical approach, but would rather view the entire surety undertaking in the light of performance expected of the principal and only exonerate the surety where the obligee has substantially breached the suretyship agreement, or in bail bond cases where the facts call for application of equitable principles making it unfair, inequitable or unjust to hold the surety. *Reese, supra,* concerned personal sureties.

A compensated surety is not favored by the law, and contracts are construed most strictly against a compensated surety and in favor of indemnity. National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. D & L Construction Co., 353 F.2d 169, 174 (8 Cir. 1965), cert. denied 384 U.S. 941, 86 S.Ct. 1462, 16 L. Ed.2d 539; Home Indemnity Company v. F. H. Donovan Painting Co., 325 F.2d 870, 874 (8 Cir. 1963); 72 C.J.S. Principal and Surety § 102, pp. 583–586 (1951).

within the principles enunciated in Hansen v. Edwards, 210 Mo.App. 35, 240 S. W. 489 (1922), where the state sovereign released the principal on extradition to another state sovereign, thus rendering the surety's performance impossible; or United States v. Craft, 162 F.Supp. 578 (S.D.W.Va.1958), where one federal court prohibited the principal from appearing in another federal district; or United States v. Vendetti, 33 F.Supp. 34 (D.C.Mass.1940), where the principal escaped from the custody of the United States after pleading guilty on another charge—the United States as obligee in the bond took the principal out of the implied custody of the surety without the surety's consent and then through the carelessness or negligence of the obligee's agents allowed the principal to escape. Nor do we think that the more liberalized equitable principle of justice as exemplified in Rule 46 commands relief as in Smaldone v. United States, *supra,* where the Court held it an abuse of the trial judge's discretion not to afford relief in a case where the principal showed up for trial but defaulted in appearance during the trial in order to have an operation for acute appendicitis, and then several days after the operation the trial was resumed and resulted in a hung jury.

We think that the present factual situation falls within those classes of cases where the sovereign did not render performance by the surety impossible, such as Detroit Fidelity & Surety Co. v. United States, 36 F.2d 682 (6 Cir. 1930) where the Court held that permission of the trial court to leave the jurisdiction did not affect the right of a surety to arrest the principal without warrant, and that a Court rule of the District Court where the bond was executed provided for departure from the jurisdiction by leave of the Court; and United States v. Davis, 202 F.2d 621 (7 Cir. 1953), cert. denied Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404, holding the trial judge did not abuse his discretion in failing to remit any of the forfeited bond where the principal after default was apprehended by the FBI and then pleaded guilty at the suggestion of the surety. The Court in *Davis* indicated that although it believed the trial court might well have remitted a portion of the forfeited amount, and the trial court's action was probably "severe or even harsh", failure to order remittal was not an abuse of discretion.

*Davis* viewed the bond as a contract between the surety and the government that if the government releases the principal from custody, the surety will undertake that the principal will appear personally at any specified time and place to answer; upon the failure of the principal to so appear, the surety becomes the absolute debtor of the United States for the amount of the penalty. Also pertinent is United States v. Egan, 394 F.2d 262 (2 Cir. 1968), where the Court held that an order requiring the principal to report daily to the marshal which was modified to require a reporting at ten-day intervals was not an enlargement of the conditions of bail nor did it enhance the principal's chances of absconding.

The surety here has not demonstrated any basis for relief, either legal or equitable. Its legal contention that a unilateral modification of the bond was brought about when the trial court granted the principal permission to leave the Court's district and travel to her home in Peoria, Illinois, is not well taken because the bond expressly provides "that the defendant is not to depart the Eastern District of Missouri * * * *except in accordance with such orders * * * as may be issued by * * * the United States District Court.*" (Emphasis supplied.) This clause expressly reserved to the Court power to enlarge the area in which the principal of the bond may travel. Stuyvesant, as a compensated surety, accepted the onerous conditions of assuring a criminal defendant's appearance for trial and should anticipate the enlargement of travel restrictions in accordance with the terms of the bond. The surety does not have to be notified every time the principal is to appear in court but instead should keep itself post-

ed on when the principal is to appear in order to keep itself informed of any changes made by the court in accordance with the terms and purpose of the bond.

■ Thus, where the enlargement of travel area does not place the principal beyond the bounds of the United States, the surety should be responsible for the appearance of the principal, and it has the power of arrest without warrant in carrying out its obligations to produce the principal.

The surety has failed to show any equitable ground for relief under Rule 46 on the broad principle that justice does not require enforcement of the forfeiture. United States v. Davis, 202 F. 2d 621, 625 (7 Cir. 1953). The principal did not appear for trial and has not been located by either the government or the surety and no exonerating explanation warranting relief has been provided.

Judgment affirmed.

### On Petition for Rehearing.

GIBSON, Circuit Judge.

Appellant in its motion for rehearing contends the Court erred in stating that the bail bond followed illustrative Form 17 in the Appendix of Forms, Fed.R. Crim.P., and that this mistake in fact was crucial in determining the applicable law. Appellant also contends that our opinion is not in accord with United States v. Foster, 79 F.Supp. 422 (S.D. N.Y.1948) and is in conflict with United States v. Egan, 394 F.2d 262 (2 Cir. 1968).

We are of the opinion that all of appellant's contentions are without merit or are not determinative of the questions raised in this case. Our original opinion merely stated that the bail bond used followed the illustrative Form 17 and there was inserted in that bond form the clause restricting travel to the Eastern District of Missouri. There is no restriction clause in illustrative Form 17 and the opinion did not intend to so indicate. The quotation referred to in the opinion setting forth the travel restriction was intended to convey that this clause was inserted in the body of the bond as an addition to the standard phraseology of illustrative Form 17.[1] We then held that any modification of the travel restriction under the circumstances of this case was binding on the surety without its consent.

The *Foster* case by way of dictum in footnote 1 on p. 424 of 79 F.Supp. said:

"The form of bond used in the Southern District of New York which differs from the form of bond set forth in the Federal Rules of Criminal Procedure, form 17, makes necessary the consent of the surety."

There is no showing in *Foster* what the bond form was or whether there was a direct requirement in the bond itself that the surety be notified of any change in travel restrictions, and the only issue in that case was whether the travel restriction imposed should be modified. There is no actual discussion of the form of the bond nor any reason stated for the dictum set forth solely in footnote 1. In fact we don't think the footnote in *Foster* merits headnote 6, that is so heavily relied upon by the appellant.

We do not find *Egan, supra*, to be in conflict with the case at bar. The precise holding in *Egan* was that the subsequent arrest of the principals on the bond on another charge did not exonerate the surety and further that modification of a reporting order by lengthening the time interval at which the principals were to report to the Court did not exonerate the surety. Appellant Stuyvesant was also the bondsman in the *Egan* case and advanced the same argument that the modification of restrictions was a basis for exoneration. The *Egan* court in dealing with that contention said at p. 266 of 394 F.2d:

"The orders [of modification] clearly come within this provision [referring to the bond provision that the defend-

---

1. A clarifying modification of the opinion has been made to show that the additional clause relating to travel restrictions is not contained in illustrative Form 17.

ant is to appear at such other places as he may be required in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the United States District Court, etc.] and it was contemplated by all the parties, including the surety, that such orders might be made. There is nothing in the bonds which call for notice to the surety if any such order or direction is issued, nor was there any enlargement of the limits of the bail."

The Court in *Egan* then went on to hold at 267 of 394 F.2d that where the criminal defendant moves the court for a modification of the terms of the bond " * * * the surety must look to the defendant for notice of the motion or discover it itself from checking the court docket."

The appellant bonding company now informs the Court that the defendant has subsequently been found, tried, convicted and imprisoned. At the time of the hearing on appeal the appellant stated to the Court that it had no knowledge of the whereabouts of the defaulting defendant.

Petition for Rehearing is overruled.