**UNITED STATES of America,**
Appellee,

v.

**John Wesley EGAN and Bryan John Hill,**
Defendants,

and

**Stuyvesant Insurance Company,**
Appellant.

**Nos. 349, 350, Dockets 31960, 31961.**

United States Court of Appeals
Second Circuit.

Argued March 22, 1968.

Decided April 24, 1968.

Lars I. Kulleseid, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Frank M. Tuerkheimer, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Joseph I. Stone, New York City (Stone & Diller, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and BLUMENFELD, District Judge.*

ANDERSON, Circuit Judge:

Following the filing of a complaint against them in the Southern District of New York, John W. Egan and Bryan J. Hill, Australian nationals, were arrested in Miami, Florida, on January 13, 1967. They were indicted in the United States District Court for the Southern District of New York on January 25, 1967 (indictment number 67 Cr. 72) for conspiring with others, named but not made co-defendants, to violate Title 21 U.S.C. § 173 and § 174 of the federal narcotics laws. Both accused, then represented by Attorney Joseph I. Stone, pleaded not guilty. Their bail had been fixed at $20,000 each. Subsequently on February 20, 1967 Hill's bail was reduced to $15,000 and it was furnished the next day with Stuyvesant Insurance Company (Stuyvesant) as surety. Egan's bail was reduced to $12,500 on March 3, 1967 and it was posted on that day with the same surety. The bail bonds were in standard form[1] and to each was attached a rider containing specific restrictions[2] imposed by Judge McGohey.

On March 17, 1967 a superseding indictment (67 Cr. 196) was filed charging the defendants with the identical offense as that charged in 67 Cr. 72 except that in 67 Cr. 196 ten other defendants were similarly charged, four of whom had simply been named as co-conspirators in 67 Cr. 72, and except that additional overt acts were alleged. On March 21, 1967 Egan and Hill were arrested by the Immigration authorities and remained in jail until each was released on a $5,000 bond furnished by Stuyvesant, Egan on March 28 and Hill on April 4. On March 23 when they were still in custody, the marshal presented them before Judge Bonsal and they pleaded not guilty to Indictment 67 Cr. 196. Judge Bonsal granted their applications to have the motions filed in Indictment 67 Cr. 72 apply to Indictment 67 Cr. 196. He further set bail in the same amounts as in Indictment 67 Cr. 72, which he marked "off the calendar," and ordered that the original bail bonds be rewritten to cover both 67 Cr. 72 and the superseding indictment. Attorney Stone agreed before

---

* Of the District of Connecticut, sitting by designation.

1. The principal pertinent condition of each of the bonds was "that the defendant ......... is to appear before ........., United States Commissioner for the ......... District of ........., at ........., and in the United States District Court for the ......... District of ......... at ........., and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the commissioner or by the United States District Court for the ......... ......... District of ......... * * *."

2. "1. The defendant shall surrender all passports.

"2. The defendant shall stay away from all airlines, airline offices, airports, airline terminals, bus terminals, train stations, depots, docks, all consulates, except that of Australia, car rental agencies and travel agencies.

"3. The defendant shall report to the U. S. Marshal for the Southern District of New York at 10:30 A.M. every morning [in the case of Hill and 11:30 A.M. in the case of Egan].

"4. The defendant is limited to the Borough of Manhattan."

Judge Bonsal in open court to take care of having the bonds rewritten but he never did anything about them and they never were rewritten.

On April 5 other counsel appeared for Egan but Attorney Stone continued to represent Hill.[3] On May 22, the accuseds' motions to have the order, which required them to report to the marshal every day, modified so that they would report every ten days was granted by Judge Cannella. On June 19, Hill moved for leave to extend the bail limits to include Attorney Stone's residence on Long Island. This motion was granted by Judge Mansfield although Hill never actually took advantage of the extension.[4] The defendants reported to the marshal for the last time on July 10, 1967 and they failed to appear as ordered on July 14 when their trial on 67 Cr. 196 was to be held. The defendants had absconded. On July 20 the bonds were called in the District Court and Judge Bonsal ordered the bail forfeited on Indictment 67 Cr. 196. It was then discovered that Attorney Stone had failed to have the bonds rewritten and the Government later moved for the forfeiture of the bail on Indictment 67 Cr. 72. Judge Cooper ordered the forfei-

ture on July 28. The surety, Stuyvesant, represented by Attorney Stone moved to set aside the forfeiture but Judge Cooper denied the motion on November 6, 1967. It is from this ruling that Stuyvesant has appealed. We affirm.

The appellant argues that its obligation as surety was exonerated as a matter of law when the defendants were taken into custody by the Immigration and Naturalization Service on March 21, 1967, and that it was relieved of any obligation on the bail bonds because it did not consent to the relaxation of the defendants' obligation to report from every day to every ten days as granted by Judge Cannella.[5]

■■ The arrest of the defendants by the Immigration and Naturalization Service did not *ipso facto* operate as a discharge of the surety's obligation as a matter of law. The appellant relies on the general proposition that bail will not be forfeited where performance of a condition of the bond is rendered impossible by an act of God, the public enemy, the obligee, or the law. Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1873); 8 C.J.S. Bail § 76. It contends that when defendants Egan

---

3. Mr. Stone represented both Egan and Hill during the early months of the case and at least until the filing of the superseding indictment. On April 5, 1967, other counsel filed a notice of appearance on behalf of Egan and Mr. Stone continued to represent Hill until that accused absconded. On March 23, 1967, Egan represented to Judge Bonsal that he had no attorney at that time and Mr. Stone consented to represent Egan so far as the proceeding that morning was concerned.

4. Stuyvesant does not contend on this appeal that its obligation was cancelled by Judge Mansfield's order proposing an enlargement of Hill's bail limits.

5. Appellant does not press its argument that the mere filing of the superseding indictment exonerated the bail on Indictment 67 Cr. 72. While it has been stated that a "discontinuance of the cause" will operate to exonerate bail for appearance, see United States v. Blender, 41 F.Supp. 257 (N.D.Ill.1941), "[a] continuance or postponement of the case will not dis-

charge bail unless it places a burden on them [sureties] which they did not agree to assume * * *." 8 C.J.S. Bail § 78. Here, the filing of the superseding indictment and the marking of the superseded indictment "off the calendar" did not in any way amount to a "discontinuance" of the cause nor did it impose upon the surety an additional risk or burden, exonerating the bail. Western Surety Co. v. United States, 72 F.2d 457, 459 (9 Cir. 1934). Indictment 67 Cr. 72 was merely marked off the trial calendar and preference was given to Indictment 67 Cr. 196; it was still on the docket. The decisions holding bail exonerated involved acts indicating "an intention to abandon the prosecution," United States v. Blender, supra, while here the "cause" enunciated in Indictment 67 Cr. 72 was, as noted above, identical to that set forth in Indictment 67 Cr. 196. The superseded indictment was never dismissed, and the filing of the superseding indictment 67 Cr. 196 did not bar the forfeiture of bail on Indictment 67 Cr. 72.

and Hill were held in custody, they were placed beyond the jurisdiction of the bondsman, so that its performance was rendered impossible. Had the surety been called upon to produce the defendants while they were incarcerated in connection with the Immigration charge and could not do so because of their imprisonment, its claim might have some merit. As it is, however, the defendants had long since been released and had reported to the marshal many times before they absconded. The conditions of their bonds were not made impossible by their brief sojourn in jail and the surety had ample opportunity to surrender the defendants between their release from jail and the time they actually ran off. United States v. Carolina Casualty Insurance Co., 237 F.2d 451 (7 Cir. 1956). The failure of the accused to appear in July was not caused by any act or omission on the part of the Government.

■ The surety's claim of exoneration based upon Judge Cannella's modification of the order to the defendants to report daily to the marshal is equally without merit. Stuyvesant argues that this action by the court enlarged the conditions of bail and enhanced the defendants' chances of absconding; also that it was done without notice to the surety company and without its consent, and, therefore, was not within the absolute terms of its undertaking. The cases which it cites in support of its argument, United States v. Foster, 278 F.2d 567 (2 Cir. 1960); Dudley v. United States, 242 F.2d 656 (5 Cir. 1957) and Ewing v. United States, 240 F. 241 (6 Cir. 1917) are, at best, only peripherally related to the issue here. More nearly in point is the Supreme Court case cited in *Ewing* at page 254, Rees v. United States, 9 Wall. 13, 76 U.S. 13, 19 L.Ed. 541 (1870). That case is, however, distinguishable from the present case. In *Reese* the condition of the bail bond was that the accused appear at the next regular term of court and at any subsequent term. The Government and the defendant with the approval of the court, but without the knowledge of the surety,

stipulated that the case be postponed and that its continuance on the docket be subject to the disposition of two land grant cases then pending in another jurisdiction and that meanwhile the defendant be permitted to leave and remain out of the country. The Court held that this was a change in the contract which discharged the surety.

In the present case, on the other hand, the express conditions of each of the bonds stated in relevant part that "the defendant is to appear * * * at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by * * * the United States District Court for the Southern District of New York. * * *" The orders of Judge McGohey and the later modification of them by Judge Cannella clearly come within this provision and it was contemplated by all the parties, including the surety, that such orders might be made. There is nothing in the bonds which call for notice to the surety if any such order or direction is issued, nor was there any enlargement of the limits of the bail.

Stuyvesant claims that the lengthening of the reporting time to once every ten days deprived it of a certain amount of protection because it afforded the accused a longer getaway time. The surety, however, apparently knew of and acquiesced in the change of the interval for reporting, and although more than a month and a half elapsed during which Stuyvesant could have required the defendants to report daily to itself as surety, it did not do so; and if it was really afraid that because of the modification they would abscond, it had plenty of time to pick them up and surrender them, but it did not. 18 U.S.C. § 3142; F.R.Crim.P. 46(g). See Carlson v. Landon, 342 U.S. 524, 547, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

■ The surety also asserts that the trial court abused its discretion is not discharging it from liability under

the bonds. Discretion is vested in the district court with regard to forfeitures of bail bonds, Rule 46(f) (2), F.R.Crim. P. United States v. Agueci, 379 F.2d 277 (2 Cir.), cert. denied sub nom., Stuyvesant Ins. Co. v. United States, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); United States v. Accardi, 241 F.Supp. 119 (S.D.N.Y.1964), aff'd sub nom., United States v. Peerless Ins. Co., 343 F.2d 759 (2 Cir.), cert. denied, 382 U.S. 832, 86 S.Ct. 73, 15 L.Ed.2d 76 (1965); United Benefit Fire Insurance Co. of Omaha, Neb. v. United States, 306 F.2d 325 (9 Cir. 1962). Under the circumstances of this case we conclude that there was no abuse of discretion. Stuyvesant presented no basis whatever for the trial court to hold "that justice does not require the enforcement of the forfeiture." It has never produced the defendants nor has it said what effort it is making, if any, to find and produce them. Its complaint about Judge Cannella's modification of the order to report to the marshal borders on the frivolous. It lessened rather than increased the burden of the surety and, as an order relating only to the time and place where the defendants were to appear, came within the express condition of the bonds. Moreover, the trial judge was justified in holding that the surety was on notice of the change of time in reporting to the marshal and acquiesced in it. In this connection Stuyvesant complains that the trial judge implied that knowledge of Judge Cannella's order was imputed to the surety because Stuyvesant was later represented by Attorney Stone who represented the defendants. It should be noted that Attorney Stone spoke in court on behalf of Stuyvesant on March 3, 1967 at the hearing before Judge Weinfeld, some time before he filed a formal appearance for the surety. This fact coupled with the other circumstances mentioned by the trial court warranted it in drawing the fairly obvious inference.[6]

The present case arose in part because of the less than satisfactory procedures adopted with respect to the restrictions added by order of the court to the standard form. These were simply typewritten on an unsigned slip of paper stapled to the bond, which did not incorporate them by reference. Restrictions or conditions not within the express conditions of the standard form and changes in the bail limits to places within or beyond the court's own district, should be recited in the body of the bond itself or, if on a separate paper, they should be referred to in the bond as an attached schedule or supplement, or the supplement should describe itself as an amendment to the bond, designated by case name, docket number, name of defendant bonded and date and should be executed and acknowledged by the same parties so that the attachment or supplement is an instrument of the same dignity and formality as the bond itself. Likewise, subsequent modifications of the terms of the bond (including a change in bond limits) ordered by the court should be set out in such an attachment or rider or in a newly written bond, executed and acknowledged in the same fashion as the original bond.

Where the court modifies the terms of a bond on its own motion, the clerk of the court should give reasonable notice of the change to the Government, the defendant and the surety in advance of the effective date of the modification in order that the parties may be heard or the surety may take any steps it deems necessary to surrender the defendant to custody. If the Government moves the court for a modification of the terms of the bond, it should give reasonable notice of the motion to the defendant and the surety. If it is the defendant in custody of the surety who moves for a modification of the bail terms, as in the present case, the surety must look to the defendant for notice of the motion or discover it itself from checking the court docket. Regardless

6. See Continental Casualty Company v. United States, 337 F.2d 602 (1st Cir. 1964).

of who the movant may be, if the court orders a material modification of the terms of the bond, the defendant must immediately post a new, properly executed bond, or a rider similarly executed for attachment to the old bond, containing the amended conditions. If such an instrument is not filed forthwith, the court must order the defendant held in the custody of the Attorney General until such a bond is furnished.

The judgment of the District Court is affirmed.