UNITED STATES of America

v.

Gaston ROBINSON, Defendant,

Argonaut Insurance Company, Surety.

No. 74 CR. 817.

United States District Court,
S. D. New York.

July 11, 1977.

Robert B. Fiske, Jr., U. S. Atty., by Robert M. Jupiter, Asst. U. S. Atty., New York City, for the United States.

Daniel P. Hollman, New York City, for Surety.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On November 24, 1975 Gaston Robinson failed to appear during his trial for narcotics-related offenses. His surety was the Argonaut Insurance Company. On December 1, 1975 Judge Cannella, who was presiding over the trial of Robinson and his codefendants, ordered that the $50,000 bond be

forfeited under Rule 46(e)(1), Fed.R.Crim.P. The Government moved for judgment on the forfeiture of the surety bond on October 7, 1976. On December 1, 1976 this court signed the forfeiture judgment, although leave was granted to move for reconsideration of this court's order. Such motion was made by Argonaut on December 15, 1976. On reconsideration, this court denies Argonaut's motion to set aside the judgment.

Robinson was originally indicted in this District under Indictment 74 Cr. 817 which was filed on August 19, 1974. He was arrested on this indictment in Miami, Florida in early October. At that time bail was set at $100,000. When the bail was subsequently lowered to $50,000, Argonaut posted the bond. Robinson was then removed to the Southern District of New York where he was arraigned on 74 Cr. 817.

On May 12, 1975 Robinson was arraigned on a superceding Indictment, 75 Cr. 429. At arraignment, Judge Cannella ordered the bond on 74 Cr. 817 to be transferred to the new bill. Robinson's attorney, Philip Carlton, was ordered to notify Argonaut to this effect. It now appears that Carlton never did notify Argonaut of the superceding indictment and the order to transfer the bond.

Robinson's trial before Judge Cannella began on October 20, 1975. On November 17, 1975 the Government moved that Robinson's bail be increased to $250,000. Aside from those facts already known, the Government added the following new reasons as a basis for its application: Robinson probably had a second passport in addition to the one already confiscated by the Government; certain harmful testimony against Robinson would be corroborated by another Government witness thus strongly increasing Robinson's chance for conviction.

Judge Cannella ordered that the bond be increased to $100,000. He gave Robinson 48 hours to obtain the new bond and put Robinson in the custody of his attorney—rather than committing the defendant until the new bond was posted. Judge Cannella subsequently extended the time during which the bond could be secured. As noted before, Robinson failed to appear on November 24, 1975. To this day he has not been apprehended.

Argonaut advances four separate reasons why it is entitled to a return of its $50,000: 1) Judge Cannella ordered that the bail on the superceded indictment be exonerated; 2) where there is a material modification of the terms of the bond, the Government must notify the surety personally, and the Government failed to do this when the bond was increased; 3) the Government also failed to notify Argonaut when Judge Cannella ordered the bond to be transferred to the new indictment; and 4) Robinson should have been incarcerated when he failed to post the new bond within a reasonable time (i. e. by the end of the day on November 17, 1975).

Argonaut's late-asserted claim—that the bond on 74 Cr. 817 was exonerated—is without merit. A reading of the full transcript in context demonstrates that this bond would be exonerated on the condition that it be transferred to the superceding indictment. The bond was never transferred and was thus never exonerated.

The second contention of Argonaut is that the Government's duty was to notify it when Judge Cannella ordered the bond increased to $100,000. This argument rests on the interpretation of dicta in a little-cited Second Circuit case, *United States v. Egan*, 394 F.2d 262, *cert. denied, sub nom. Stuyvesant Ins. Co. v. United States*, 393 U.S. 838, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968). In that case the surety moved to set aside the forfeiture of his bond on the ground that he had no notice of certain occurrences in the trial court. Of direct relevance to this case was the surety's claim that it had no notice that the trial judge changed the conditions of the bond whereby the defendants were required to report to the marshal once every ten days as opposed to every day. The surety claimed that this extension increased the "getaway" time for the defendants and increased the surety's risk.

The Court never reached the ticklish legal issue because it upheld the trial court's

finding that the surety *knew* of this change. However, it said the following by way of dicta (at 267–68):

> If the Government moves the court for a modification of the terms of the bond, it should give reasonable notice of the motion to the defendant and the surety. If it is the defendant in custody of the surety who moves for a modification of the bail terms, as in the present case, the surety must look to the defendant for notice of the motion or discover it itself from checking the court docket. Regardless of who the movant may be, if the court orders a material modification of the terms of the bond, the defendant must immediately post a new, properly executed bond, or a rider similarly executed for attachment to the old bond, containing the amended conditions. If such an instrument is not filed forthwith, the court must order the defendant held in the custody of the Attorney General until such a bond is furnished.

In the instant case the Government moved that the bond be increased fivefold, no notice was given the surety by the Government (although the defendant, who was present in court, had notice), and despite the fact that "such an instrument [was] not filed forthwith" the defendant was not taken into custody.

█ Application of the *Egan* dicta would be easy if it were not for the pause-giving facts that Shepards has revealed no case in which the dicta have been applied and the dicta appear to buck the apparent long-standing lack of sympathy extended sureties by other courts. The Argonaut bond has no requirement that the Government give the surety notice of any kind. Courts have held that under these circumstances no notice is required. *United States v. Caro*, 56 F.R.D. 16, 19 (S.D.Fla.1972). *Caro* (at 19) also held that, in any case, notice to the defendant was tantamount to notice to the surety. *See also United States v. Wray*, 389 F.Supp. 1186 (W.D.Mo.1975). The Eighth Circuit has imposed the strict requirement that the surety keep itself informed as to what occurs at trial. *Stuyves-*

*ant Insurance Co. v. United States*, 410 F.2d 524, 527, *cert. denied*, 396 U.S. 836, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969). Despite this contrary authority, this court believes that this Circuit has set a minimal duty on the Government to notify the surety when its risk has been significantly increased and the surety is not likely to be aware of this fact.

The Government argues that *Egan* requires notice when the conditions of the outstanding bond have been changed. In this instance, the bond was not changed but rather a new and increased bond was required. While it is true that a verbatim reading of *Egan* supports the Government's position, it is reasonable to construe *Egan* a bit more broadly. *Egan* recognizes that a surety can not be expected to be constantly in court to moniter the proceedings. It also implicitly recognizes that neither the defense attorney nor the defendant can be counted upon to notify the surety when in many cases such notice will result in the surrender of the defendant by surety. Rather, *Egan* stands for the notion that the surety must be notified when the Government becomes aware that the risk of flight has increased. The burden on the Government is a miniscule one and only arises when there has been a significant change in the bond. Furthermore, notice serves the Government's interest as it protects the surety neither wishes to see the defendant flee.

█ Having imposed this notice burden on the Government, the court now finds that the Government should prevail on this point since it has met its burden of proving that Argonaut received actual notice that the bond was to be increased to $100,000.

The deposition of Philip Carlton, Robinson's trial lawyer, shows that Robinson made a telephone call or calls after the judge ordered the bond increased. According to Carlton, the calls were for the purpose of obtaining the new bond. On November 24, the day that Robinson failed to appear, a Mr. David Curry appeared in court for the purpose of investigating the possibility of writing the new bond.

Curry worked for John O'Connell—who was also the employer of Robert King, the person who wrote the first bond for Robinson. O'Connell was an agent for Argonaut Insurance Company, and King took his orders from O'Connell. Curry also said that about seven other sureties had been contacted with respect to obtaining the increased bond.

It is reasonable to infer, in the absence of any evidence to the contrary, that Argonaut had notice of the increased bond in at least one of two ways. First, it is likely that the company which wrote the original bond was one of the seven companies contacted to write the new one. Second, and most importantly, O'Connell's employee, King, wrote the first bond, and another employee of O'Connell, Curry, travelled to New York to inquire about the increased bond. It is fair to infer that O'Connell (and thus Argonaut) had actual notice of the increased bond. Both King and O'Connell were deposed and neither had any recollection of either the first or second Robinson bond. In sum, the Government has proved its prima facie case, and Argonaut has failed to rebut the showing that it had notice of the order to increase the bond.

■ Argonaut's third basis for setting aside the judgment of forfeiture is that Argonaut was not notified that Judge Cannella had ordered the bond transferred to the superceding indictment. There are two independent reasons why this claim is meritless: First, *Egan* does not require notice in this instance because it is not apparent that such a transfer increased the risk to the surety. Second, and more pointedly, over six months passed between the transfer order and the disappearance of Robinson. If Argonaut was doing a proper job as surety, it would have learned of the superceding indictment long before Robinson fled.

■ Argonaut's last claim is also based on *Egan's* dicta. Judge Cannella gave Robinson two days to post the new bond, and the Judge put Robinson in the custody of his attorney during that time. Argonaut says that Robinson should have been incarcerated when he failed to post the new bond at the end of the day on November 17. Under all the circumstances of this case, this court does not feel that Judge Cannella should have immediately remanded Robinson. Robinson had appeared faithfully up to that time, and in light of the spirit of the Bail Reform Act of 1966, Pub.L. 89–465, 80 Stat. 214 (see especially 18 U.S.C. § 3146(a)(1)), Judge Cannella's alternative to incarceration—putting the defendant in the custody of his attorney—was reasonable. Furthermore, Curry, and thus Argonaut, learned of the new bond on November 19. The defendant fled on November 24. Argonaut had approximately five days to act to either increase the bond or surrender the defendant. It was therefore not prejudiced by the failure to remand Robinson.

In sum, the court cannot find "that justice does not require the enforcement of the forfeiture." Rule 46(e)(2). This determination is within the discretion of the district court, *Egan, supra*, at 267 and cases cited therein. The judgment of forfeiture previously signed by this court must stand.