671 F.2d 975
 UNITED STATES of America, Plaintiff-Appellee,
v.
George CASEY, Defendant,
Charles Goldfarb and Goldfarb Bonding Company and
International Fidelity Insurance Company,
Allegheny Mutual Casualty Company,
Defendants-Appellants.
 No. 80-1658.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 27, 1982.
Decided March 1, 1982.
 
 N. C. Deday LaRene, Detroit, Mich., for defendants-appellants.
 James K. Robinson, U.S. Atty., L. Michael Wicks, Christopher A. Andreoff, Asst. U.S. Attys., Detroit, Mich., for the U. S.
 Before EDWARDS, Chief Judge, MARTIN, Circuit Judge, and REED,* District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Surety defendants Charles Goldfarb, Goldfarb Bonding Company, International Fidelity Insurance Company, and Allegheny Mutual Casualty Company appeal an appearance bond forfeiture.
 
 
 2
 On June 13, 1979, the principal defendant George Casey was indicted in the Eastern District of Michigan for various narcotics violations. This indictment, referred to by the parties as "# 359", included a count of conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848.
 
 
 3
 Casey's bond was set at $500,000. On July 13, 1979, the District Court held a "Nebbia" hearing pursuant to the government's motion to examine the corporate sureties. See United States v. Nebbia, 357 F.2d 303 (2nd Cir. 1966). At this hearing, Casey's counsel alerted the court that Casey might be facing additional narcotics charges because of drugs allegedly found in his possession at the time of his arrest under the original indictment. Counsel then asked for assurances that the $500,000 bond would cover any such additional charges. The court's response, although not unequivocal, indicated agreement. Charles Goldfarb and his attorney were present at the Nebbia hearing; neither objected to defense counsel's request.
 
 
 4
 On September 28, 1979, a superceding indictment, # 551, issued against George Casey. It differed from # 359 only in that it included the anticipated additional two charges of "possession with intent to sell" and extended the time frame of the § 848 violation by about two weeks.
 
 
 5
 On October 3, 1979, Casey, accompanied by his counsel and the prosecuting attorney, was arraigned on the superceding indictment. Bail was continued in the amount of $500,000. The presiding magistrate entered a stipulation and order to transfer bail to indictment # 551. The surety defendants were not represented at this hearing.
 
 
 6
 Between October 2, 1979 and June 3, 1980, all documents filed by the government in this case bore the numbers of both indictments.
 
 
 7
 On April 9, 1980, the surety defendants filed a Motion for Permission to Remove Interest Coupons from Notes Deposited as Security for Appearance under Case No. 359. The government's answer contained references to both # 359 and # 551.
 
 
 8
 On June 3, 1980, Casey pleaded guilty to the "continuing criminal enterprise" count of the superceding indictment. According to his plea bargain, he would receive a sentence of ten years without possibility of parole. The government agreed to dismiss the entire original indictment and all remaining counts of the superceding indictment at the time the court imposed sentence on the plea.
 
 
 9
 Casey failed to appear for sentencing on the scheduled date. The surety defendants did appear, however, prepared to seek release from their bond obligation. The court issued a bench warrant for Casey's arrest and the government moved for forfeiture of his appearance bond. After a hearing on September 9, 1980, the court entered a judgment of bond forfeiture. The surety defendants appeal.
 
 
 10
 Before addressing the merits of this appeal, we note that the correct standard of review in bail bond forfeiture cases is whether the District Court's actions were "arbitrary and capricious." United States v. Parr, 594 F.2d 440 (5th Cir. 1979).
 
 
 11
 The surety defendants argue that the bond they posted on behalf of George Casey applied only to the original indictment. In support of this position, they advance several theories.
 
 
 12
 First, they argue, the language of the bond contract itself precluded its application to the superceding indictment. They direct our attention to an earlier decision of this court, United States v. Eisner, 329 F.2d 410 (6th Cir. 1964), where we held that bail bonds should be construed strictly and that recovery on a bond depends on a showing of liability under its express conditions. Id. at 412.
 
 
 13
 The surety defendants' reliance on Eisner, however, fails to strengthen their position in this case. Nothing in the language of this bond prohibited transfer of its provisions to a superceding indictment which alleged substantially the same offenses as the first. Indeed, the sureties undertook to guarantee Casey's appearance at "such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above-entitled matter as may be given or issued by the magistrate or by the United States District Court." (emphasis added.) Thus, the sureties' assertion that the order transferring bail to the superceding indictment was ineffective is simply without merit.
 
 
 14
 Second, the sureties contend that the superceding indictment differed materially from the first in that it contained additional counts against Casey. According to this argument, the two additional counts of "possession with intent to sell" increased the sureties' risk of Casey's non-appearance and therefore operated as a release of their obligation under the bond. We do not dispute the general principle that a material increase in risk discharges a surety; we do, however, reject the suggestion that it applies to the present case. We do not believe that the addition of those particular charges to a multicount indictment which already included more serious narcotics violations significantly increased the likelihood that Casey would jump bail. That Casey in fact remained available until after he had negotiated a plea bargain which specified the dismissal of the additional counts effectively refutes this theory. See United States v. Hesse, 576 F.2d 1110 (5th Cir. 1978).
 
 
 15
 Third, the sureties argue that they had no notice of the superceding indictment or of the court's order transferring bond from # 359 to # 551. Again, we cannot agree. The District Court found that the sureties had effective notice of the change by virtue of their attendance at the Nebbia hearing and their familiarity with the paperwork occasioned by their request to clip coupons. We uphold this finding of the District Court and note that the sureties' readiness to secure release from their bond at Casey's scheduled sentencing on the superceding indictment is hardly consistent with their present claim that their bond covered only the first indictment.
 
 
 16
 Finally, the surety defendants make a "material increase in risk" argument with reference to Casey's negotiation of a plea agreement. They contend that Casey's knowledge that he was facing a ten-year sentence increased the sureties' risk and should therefore exonerate them from liability on the bond. Casey's plea bargain may or may not have "increased the risk;" in this context, however, the question is academic. The bond contract specifically indicates that the bond's effectiveness would continue through appeal. The sureties knew from the outset that Casey might negotiate a plea bargain and that some time might elapse between entry of his plea and sentencing. It is, as the government suggests, absurd for them to claim surprise at this turn of events. We emphasize that this is not a case where the principal defendant disappeared after sentencing; the line of cases which includes United States v. D'Anna, 487 F.2d 899 (6th Cir. 1973) is, as the District Court found, inapposite to the present controversy.
 
 
 17
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation