30 F.3d 135
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert V. SCOTT, Defendant,
Vicki Maddox, Surety for Defendant-Appellant.
 Nos. 93-5375, 93-6340.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1994.
 
 Before: GUY and NELSON, Circuit Judges; and QUIST, District Judge.*
 PER CURIAM.
 
 
 1
 Vicki Maddox posted a $10,000 bond[1] to guarantee the appearance of Robert Scott who had been indicted on narcotics and firearms charges. Scott pled guilty but did not appear on the date set for sentencing. Bail was revoked and a warrant issued for Scott's arrest.
 
 
 2
 Although Scott was apprehended within the next 30 days, the government nonetheless filed a motion for forfeiture of Scott's appearance bond. After a hearing, this motion was granted.[2] Maddox appeals from the order of forfeiture. During the pendency of this appeal, Maddox filed with the district court a motion seeking relief from judgment, pursuant to Federal Rule of Civil Procedure 60(b). First Nat'l Bank of Salem v. Hirsch, 535 F.2d 343 (6th Cir.1976). The basis for the Rule 60(b) motion was that Maddox learned that a former Lexington police officer, William T. Canan, had been indicted by a federal grand jury. Included in the charges against Canan was a charge that he had intimidated Robert Scott for the purpose of preventing Scott from testifying before a grand jury that was investigating Canan. Scott testified that Canan had threatened him and his family with bodily harm if he testified for the government. Scott further testified that Canan had given him $200 the night before Scott's sentencing to be used for the purpose of his leaving town. The district judge who presided over these forfeiture proceedings was also the district judge who handled the Canan case, and he was aware of the interrelationship between Canan and Scott at the time that the surety's original motion for relief from judgment was filed.
 
 
 3
 Maddox also has appealed from the denial of the Rule 60(b) motion, and both that appeal and her earlier appeal have been consolidated.
 
 
 4
 Although we may have reached a different conclusion than the district court on the facts presented, we are unable to conclude the district judge abused his discretion. Accordingly, we affirm.
 
 I.
 
 5
 When a defendant whose appearance has been guaranteed by a bond fails to appear, a district court must declare a forfeiture of the bail. This result is dictated by Rule 46(e) of the Federal Rules of Criminal Procedure, which provides in pertinent part:
 
 
 6
 (e) Forfeiture.
 
 
 7
 (1) Declaration. If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail.
 
 
 8
 (2) Setting Aside. The court may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, if a person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it otherwise appears that justice does not require the forfeiture.
 
 
 9
 (3) Enforcement. When a forfeiture has not been set aside, the court shall on motion enter a judgment of default and execution may issue thereon....
 
 
 10
 (4) Remission. After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision.
 
 
 11
 In reviewing a district court's decision denying a request to set aside the forfeiture or denying remission after judgment, we have indicated that the standard of review is whether the district court's actions were "arbitrary and capricious." United States v. Casey, 671 F.2d 975, 976 (6th Cir.), cert. denied, 458 U.S. 1108 (1982). Other circuits have indicated that abuse of discretion is the standard of review. United States v. Santiago, 826 F.2d 499, 505 (7th Cir.1987). Under either standard of review, in this case the result would be the same: the decision of the district judge must be affirmed.
 
 
 12
 The courts have set forth a number of factors that a district court should consider when deciding whether a forfeiture should be set aside or remitted. These include the willfulness of the defendant's conduct in failing to appear; mitigating circumstances; whether the surety played any role in apprehending the defendant; the cost, inconvenience, or prejudice to the government; the amount of the bond; and whether the surety was a professional bondsman as opposed to a friend or a relative. See United States v. Miner, 846 F.2d 1184, 1190 (9th Cir.1988). When these considerations are applied to the facts in this case, it becomes clear that the district judge acted well within his discretion.
 
 
 13
 There is no doubt that Maddox became concerned about the possibility of flight by defendant. She was aware that defendant's brother recently had jumped bail, because a United States Marshal had come to her house seeking her assistance in locating the brother. Maddox went to the court clerk's office and made inquiries relative to defendant's date of sentence as well as the procedure for getting out from under her surety obligations. She also hired an attorney to look into the matter, and it is not clear that she would have been released from the bond even if she had filed a formal motion seeking release.
 
 
 14
 Notwithstanding that Scott indicated his flight was precipitated by Canan's threats, it was nonetheless an affirmative decision on his part not to appear in court.[3] He had the alternative of going to the government and seeking protection for both himself and his family. As it turned out, Scott obviously did testify against Canan.
 
 
 15
 Although Maddox would have been willing to help in apprehending defendant, the fact remains that she was unable to be of any assistance. The government was put to the effort of finding Scott in another state and of returning him to the jurisdiction where he was indicted. The government also was put to the expense occasioned by the delay in the proceedings. The amount of the bond was not exorbitant; indeed, it obviously was not high enough to keep defendant from fleeing. Although Maddox was not a professional bondsman, she was on notice of the risk that she took when she elected to become a surety on Scott's bond. When friends or relatives post bond for a defendant, one of the restraints imposed is that a defendant normally would not want to put in jeopardy the friend or relative who has made it possible for him to be admitted to bail. If the courts were overly forgiving in those circumstances where professional bondsmen were not involved, the effectiveness of that restraint would disappear. Defendants have to know with reasonable certainty that if they skip the friends or relatives will forfeit the money or property that was posted as bond; otherwise, the deterrent effect is simply eliminated. It is for this reason that we reject Maddox's principal argument that "justice does not require the forfeiture." Fed.R.Crim.P. 46(e)(2).
 
 
 16
 Maddox's best argument might be one that she does not make. If we were to apply an equitable "clean hands" analysis to this fact situation, it would be possible to construct an argument that the government should not profit monetarily by way of this forfeiture when a government agent contributed to the defendant not being present. There are two problems with this argument, however. First, the judiciary is the agency that is involved in the forfeiture, as the bond guarantees the defendant's presence before the court. No employee or agent of the judicial branch or, for that matter, of the federal government was in any way involved in wrongdoing. Second, as indicated earlier, the decision as to forfeiture is initially the call of the district judge, and the district judge in this case was aware of the agent's wrongdoing, but nonetheless felt that forfeiture was required. We are unable to conclude that this decision was arbitrary or capricious.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Gordon J. Quist, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The $10,000 was the value of real estate owned by Maddox and put up as security
 
 
 [2]
 Maddox and her counsel were at the hearing, but Scott was not present
 
 
 [3]
 It is not at all clear that Scott's flight was actually precipitated by Canan's threats. We obtained a copy of the Transcript of Preliminary Examination and Detention Hearing in the case of United States v. Canan, No. 93-5067M (E.D.Ky. April 13, 1993). Scott testified at this hearing, and included within his direct examination was the following:
 Q. [Assistant U.S. Attorney] Did there come a time that you left town, Mr. Scott?
 A. Yes, ma'am.
 Q. And how did that happen?
 A. Well, I had been telling Mr. Canan all along that I was going to take off, that I wasn't going to court. And the day before I was to be sentenced, the night before I left town, Mr. Canan had come up to see if I was going to leave, and I assured him that I was. And he gave me $200, and I left town that night.
 Q. Did he say what the $200 was to be used for?
 A. Just to help me out. He knew I didn't have no money and stuff so, you know.
 Id. at 55.
 Additionally, on cross-examination, the following testimony was elicited by Canan's attorney.
 Q. After you were taken into custody, did you not move your wife and children closer to the location where Mr. Canan lived?
 A. Yeah. I moved around the corner into an apartment complex.
 Q. Did you move other members of your family closer to where Mr. Canan lives as well?
 A. Well, basically, my wife chose to move there since I was going to prison. I didn't have much to say about it.
 Q. So your wife chose to live there?
 A. Yeah.
 Q. And she chose to move other relatives there, too?
 A. My two kids, yeah.
 Q. And any other relatives?
 A. Well, I--she's got a sister that lives there, and my parents were living there.
 Q. And this was after you told the FBI that Mr. Canan had threatened you, and you were incarcerated?
 A. Correct.
 Q. Did your brother run from the authorities as well before he was sentenced?
 A. Yes, he did.
 Id. at 72-73.