RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KUNUZ MOHAMMED-ALI, et al.,

*Defendants,*

FREE AT LAST BAIL BONDS, INC.; INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,

*Defendants-Appellants.*

No. 15-6003

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:13-cv-02058—Sheryl H. Lipman, District Judge.

Decided and Filed:  May 17, 2016

Before:  BOGGS and KETHLEDGE, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ON BRIEF:**  Richard S. Townley, BALLIN, BALLIN & FISHMAN, P.C., Memphis, Tennessee, for Appellants.  Barbara M. Zoccola, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

KETHLEDGE, J., delivered the opinion of the court in which BOGGS, J., joined. STAFFORD, D.J. (pp. 6–7), delivered a separate dissenting opinion.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  In March 2010, Free at Last Bail Bonds ("Free") and Fuad Hamza jointly and severally secured a $75,000 appearance bond on behalf of Kunuz Mohammed-Ali, an Ethiopian national (and Hamza's cousin) who had been charged with smuggling a controlled substance, namely khat, into the United States in violation of 18 U.S.C. § 545.  One condition of the sureties' obligation was that Mohammed-Ali "comply with all conditions of release imposed by this court," which included that Mohammed-Ali wear a GPS ankle bracelet.  But 15 months later—at Mohammed-Ali's request and without objection from the government—the district court entered an order allowing him to remove the ankle bracelet. Neither Mohammed-Ali's counsel (a Federal Defender), nor the prosecutor, nor the court itself provided the sureties with notice of Mohammed-Ali's motion to remove the bracelet or of the court's order granting it.  Thereafter Mohammed-Ali fled to Ethiopia.  The government then filed a civil complaint seeking judgment against the sureties in the amount of the appearance bond. The district court granted summary judgment to the government in that action, reasoning that Free had constructive notice of the motion to remove the ankle bracelet because Free could have accessed the docket for Mohammed-Ali's case by means of the court's electronic-filing system. We disagree with that conclusion and reverse.

"Liability on a bond is a matter of contract[.]"  *United States v. King*, 349 F.3d 964, 966 (7th Cir. 2003).  Bond agreements allocate risk, so when determining a surety's liability "the right question to ask is what risk [the surety] agreed to accept."  *Id*. at 967.  Here, the risk the sureties agreed to accept was that Mohammed-Ali might flee notwithstanding his conditions of release, which included the government's monitoring of his whereabouts by means of his GPS ankle bracelet.  That risk included the possibility that Mohammed-Ali might saw off his ankle bracelet and then flee.  What the sureties did not bargain for, however, was that the district court would remove the bracelet for him.

That change in the conditions of Mohammed-Ali's release was plainly material.   A district court should not order a material change to a bond's conditions without first providing the sureties "notice and an opportunity to be heard—and to revoke their commitments if the judge alters the terms of release over their opposition." *Id*. at 966; *see also Reese v. United States*, 76 U.S. 13, 21 (1869).  If the surety has notice of a change and consents to it, the surety remains liable.  Absent notice and an opportunity to revoke, however, "a material change in risk can discharge the surety's obligation[.]" *King*, 349 F.3d at 967; *see also United States v. Casey*, 671 F.2d 975, 977 (6th Cir. 1982) ("a material increase in risk discharges a surety").  Hence the question here is whether the sureties—specifically Free, which brought this appeal—were given notice of the motion to remove Mohammed-Ali's bracelet and an opportunity to revoke their commitments if the motion were granted.

We begin and end with the question of notice.  The district court freely acknowledged that Free did not, in fact, have notice of Mohammed-Ali's motion to remove his ankle bracelet.  By some dereliction nobody told the sureties about it.  But the district court reasoned that "Free at Last received notice"—by which it meant constructive notice—"via the Court's electronic filing system[.]" Op. at 8.  What the court meant, specifically, was that the court's electronic-filing system "allows public access to court filings," *id*., and thus Free could have checked the docket for itself to see that Mohammed-Ali had moved to eliminate the principal impediment to his flight.

That notice was weak tea, and for several reasons we hold it was inadequate.  The first is that the Criminal Rules themselves imply that, when a surety is entitled to notice, the surety is entitled to better notice than the sureties got here.  Just as a surety is entitled to notice of a motion to modify a bond's conditions, so too a surety is entitled to notice of the government's motion to enforce the surety's liability. *See* Fed. R. Crim. P. 46(f)(3).  And to provide notice of a government's motion to enforce the surety's liability, "the clerk must promptly mail a copy to the surety at its last known address." Fed. R. Crim. P. 46(f)(3)(C).  As to a motion to enforce the surety's liability, therefore, the mere existence of the court's electronic-filing system is not enough.  We see no reason why the answer should be different for a motion that leads to the

condition—namely, flight—that creates the surety's liability in the first place. That is not to say that notice for both kinds of motions must take precisely the same form, *i.e.*, a mailing from the district clerk. But it is to say, as to a motion to modify the bond's conditions, that someone—the defendant, the prosecutor, the court—must "send the notice forward" to the surety. *King*, 349 F.3d at 966.

The second reason is practical. Motions to modify a bond's conditions are rare as compared to all the other kinds of motions filed in criminal cases. The district court's approach would require a surety frequently if not constantly to sift through all those motions, in all the surety's cases (Free says it has 500 at any given time), to see whether, amidst all that chaff, someone has filed a motion to modify a bond's conditions. Someone will eventually pay for all that effort, and that person will likely be the defendant himself (or the friends and family who help pay for the surety's services). A similar approach would be for the surety to sign up for electronic mailings of all filings in the surety's cases, but that would just bring the same baskets of chaff to the surety's email inbox rather than to its internet browser. A more efficient and likely more effective alternative would simply be to require the defendant, the prosecutor, or the court to send the surety an email, or a piece of paper, in the rare instances when someone moves to modify a bond's conditions.

Finally, not every surety is as sophisticated as Free and thus as capable of navigating a court's electronic-filing system (assuming they even know it exists). This case illustrates the point: Mohammed-Ali's cousin, Fuad Hamza, pledged his house as security for the bond and was jointly and severally liable with Free for the bond's amount. Perhaps Hamza, or others situated like him in future cases, would know from the criminal defendant himself that the conditions of his release had been modified in some material way. But if Hamza denied it, the court would likely need to hold an evidentiary hearing on the matter, which would waste the resources of everyone concerned. The better approach is to send the surety an email or piece of paper.

None of the relevant circuit cases are to the contrary, because none involved a change to the bond's conditions. In *United States v. Craft*, 763 F.2d 402, 404 (11th Cir. 1985), "the terms

of the bonds were never changed[.]" And in both *Stuyvesant Ins. Co. v. United States*, 410 F.2d 524, 526 (8th Cir. 1969), and *United States v. Egan*, 394 F.2d 262, 266 (2d Cir. 1968), the district courts had merely exercised discretion granted to them by the terms of the bonds themselves. Those cases have little to say, therefore, about a surety's rights with respect to the material change at issue here.

The sureties did not receive notice of the motion to modify the bond's conditions in this case. And by granting that motion the district court altered the risk the sureties agreed to accept. Justice therefore "does not require bail forfeiture[,]" Fed. R. Crim. P. 46(f)(2)(B), or in our view even permit it. The district court's judgment is reversed, and the case remanded with instructions to render judgment in favor of Free.

-------------------

**DISSENT**

-------------------

STAFFORD, District Judge, dissenting. Because I do not agree that the district court abused its discretion in declining to set aside the bond forfeiture, I must respectfully dissent.

The Rules of Criminal Procedure provide that a court "*must* declare a bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1) (emphasis added). The court may, however, "set aside in whole or in part a bail forfeiture upon any condition the court may impose if . . . it appears that justice does not require bail forfeiture." *Id.* R. 46(f)(2). Further, the court may, after entering a judgment of default, "remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2)." *Id.* R. 46(f)(4). "[I]n reviewing a district court's decision to deny a request to set aside a bond forfeiture or denying remission after judgment, the standard of review is whether the district court's actions were arbitrary and capricious." *United States v. Parrett*, 486 F. App'x 544, 547 (6th Cir. 2012) (internal quotation marks omitted). A district court abuses its discretion when it acts in an arbitrary or capricious manner. *Id.*; *see also United States v. Cornett*, 767 F.2d 922, 922 (6th Cir. 1985) (unpublished decision) (stating that "[i]n order to reverse the trial court's refusal to set aside or remit [a bond forfeiture], we must find an abuse of discretion"); *United States v. Gonzalez*, 452 F. App'x 844, 845 (11th Cir. 2011) (noting that district court has "virtually unbridled discretion" in dealing with matters of bond forfeiture under Fed. R. Crim. P. 46(f)(2) and (f)(4)).

Here, the district court determined that Free at Last had constructive notice—through the court's electronic case filing system—of a material change in Mohammed-Ali's bond conditions (removal of GPS ankle bracelet) and that Free at Last failed to demonstrate that "justice d[id] not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). Among other things, the district court noted that (1) Free at Last is a "sophisticated party" whose bond agreement did not require notice to the surety as to any orders the court entered; (2) the burden on sureties to monitor cases in 2010, when federal courts commonly used electronic filing and noticing systems, was not onerous; (3) despite an online public docket that could be easily monitored, Free at Last did not monitor

the docket in this or any of the other many cases in which it issued bonds; (4) Mohammed-Ali was out on bond without a GPS ankle bracelet for approximately eighteen months before he fled to Ethiopia in November 2012;[1] and (5) Mohammed-Ali appeared in court four times during that eighteen-month period, which means that—presumably—he would not have been difficult for Free at Last to contact. Specifically, he appeared in court to enter a guilty plea on July 15, 2011, for status conferences on March 29 and May 16, 2012, and for sentencing on August 23, 2012, all while wearing no GPS ankle bracelet.

Given these circumstances, the district court concluded that it was "not unreasonable to expect that Free at Last would have checked the docket at least once during that time to determine how the case was progressing and whether there were any changes that might necessitate a re-evaluation of its commitment."[2] Having determined that Free at Last not only received constructive notice of the change in bond conditions and but also failed to demonstrate that justice did not require bail forfeiture, the district court concluded, in its discretion, that Free at Last was *not* entitled to have the bond forfeiture set aside based on its failure to receive actual notice of a material change in the bond terms. The district court's refusal to remit the bond forfeiture in this case was not arbitrary, capricious, an abuse of discretion, or contrary to law; and we should accordingly affirm.

---

[1]One of Mohammed-Ali's bond conditions—one that was never changed—was that he surrender his passport to Pretrial Services.

[2]If a Free at Last representative had had a face-to-face encounter with the defendant at *any* time during the eighteen months when he wore no ankle bracelet, or at least made some contact with the clerk, the defendant's probation officer, or other court official, that representative could have learned—or seen with his or her own eyes—that the defendant was not wearing an ankle bracelet.